BLITMAN & KING, LLP
Jennifer A. Clark, Esq.
Attorneys for Creditors
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, New York 13204
Telephone: (315) 422-7111
E-mail: jaclark@bklawyers.com

**Return Date: TBD**
**Time: TBD**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In Re:

    BLUE DIAMOND AIR SYSTEMS, INC

                    Debtor.

Chapter 11
Case No. 8-22-72698-ast

**AFFIRMATION IN OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE DEBTOR TO ENTER INTO AN INSURANCE PREMIUM FINANCING AGREEMENT**

STATE OF NEW YORK     )
COUNTY OF ONONDAGA ) ss.:

JENNIFER A. CLARK, under penalty of perjury, hereby affirms as follows:

1.    I am an attorney at law and a member of the law firm of Blitman & King LLP, attorneys for Sheet Metal Workers' National Pension Fund, National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry, Sheet Metal Occupational Health Institute Trust, International Training Institute for the Sheet Metal and Air Conditioning Industry and National Stabilization Agreement of the Sheet Metal Industry Fund [referred to as "Funds" or "Creditor Funds"]. I am admitted to practice law in the State of New

{B0291328.1}

York and before this Court and am fully familiar with all of the facts and circumstances heretofore had herein.

2.   I submit this Affirmation in connection with Debtor's emergency motion at Docket No. 52 for an Order authorizing the Debtor to Enter into an Insurance Premium Financing Agreement with IPFS of New York, LLC and to set forth the Funds' position that the Debtor's accounts receivable, being construction proceeds, are not property of the bankruptcy estate and may not be used by Debtor to pay the $1 million cost of the insurance policy.

3.   The Funds are multi-employer plans as defined in Section 3(37) of the Employee Retirement Income Security Act of 1974 ["ERISA"] [29 U.S.C. §1002(37] and are employee benefit plans as defined in §3(3) of the Act, 29 U.S.C. §1002(3). The Funds were established and are maintained pursuant to Agreements and Declarations of Trust to provide retirement benefits to eligible participants and beneficiaries of the Funds.

4.   The benefits provided by the Funds are funded by employer contributions for each hour worked by an employer's employees. Specifically, an employer (such as Debtor Blue Diamond) bound to a collective bargaining agreement with the Sheet Metal Workers Local Union No. 28 must remit specified monies to the Funds for each hour worked by its employees. In the event an employer fails to remit contributions to the Funds, the Funds are empowered and obligated, on behalf of the employees, to collect the contributions.

5.   The Debtor Blue Diamond is a subcontractor on many construction projects. It is signatory to a collective bargaining agreement with Sheet Metal Workers Local Union No. 28 [hereinafter referred to as "CBA"]. [Attached as Exhibit "A" are pertinent portions of the CBA].

6. Debtor Blue Diamond has employed individuals covered by the CBA but has not remitted the appropriate contributions to the Funds on behalf of those employees. Debtor Blue Diamond's pre-petition debt with the Funds is approximately $1,000,000.00.

7. Debtor Blue Diamond is obligated to remit fringe benefit contributions and reports to the Funds on a monthly basis by the twentieth (20th) day of the month following the month during which the hours were worked by the employees. For instance, contributions due and owing on behalf of the employees for hours worked in October 2022 are due and payable by November 20, 2022. As of November 20, 2022, Debtor Blue Diamond will owe $110,163.39 in contributions for hours worked by its employees after October 4, 2022, the date it filed bankruptcy. [See, Exhibit "A", p. 27].

8. Under New York Lien Law, Article 3-A, the monies earned by a debtor in connection with a private or public improvement construction project constitute trust assets which must "be held and applied for the ... payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnish such supplements". Lien Law § 71(2).

9. The Funds are beneficiaries of the trust established by the New York Lien Law. Alibrandi Buildings Systems, Inc. v. Wm. C. Pahl Construction Co., Inc., 187 A.D.2d 957 (4th Dept. 1992) (employee benefit plan owed contributions on behalf of employer's employees is a beneficiary of the trust assets).

10. Since monies earned on a construction project are trust assets, the monies are not property of the Debtor or its bankruptcy estate. Heilbronner vs Nicosia, 250 B.R. 39 (W.D.N.Y. 2000) ("trust funds under Article 3-A of the Lien Law [are] not property in which the Debtor had an interest for purposes of either Section 547 or Section 548"); In re: Great South Beach

Construction, 145 B.R. 372 (E.D.N.Y. 1992) ("under bankruptcy law, the statutory trust imposed by Labor Law §220-b(2)(b) is not part of the bankruptcy estate"); Casco Electric Corp., 28 B.R. 191 (E.D.N.Y. 1983) (statutory trust impressed by New York Lien Law not included in the property of the bankruptcy estate), aff'd, 35 B.R. 731 (E.D.N.Y. 1983).

11. Use of construction proceeds, i.e., Lien Law Article 3-A assets, to pay overhead expenses, including insurance premiums, is a violation of the New York Lien Law and an unlawful diversion of trust assets. Curtis Lumber Co. v. Waldron, 2015 Bankr. LEXIS 3749 (N.D.N.Y. 2015) (improper diversion under New York Lien Law where evidence showed trust assets used to pay office overhead, attorneys' fees, rent, insurance, accountant fees, utilities, and other office expenses); In re: Matter of Kawczynski, 442 F. Supp 413 (W.D.N.Y. 1997) (use of Lien Law assets to pay overhead expenses is a diversion). See, Lien Law Section 79-a.

12. Debtor's emergency motion states that it will make an initial downpayment to the finance company of approximately $300,000.00 with seven (7) remaining monthly installment payments to pay the $1 million cost of the insurance policy. (Docket. No. 52, ¶8). Debtor Blue Diamond has not explained the source of monies to pay for the insurance policy, has not given an accounting of the monies earned in connection with its work at its construction projects, and has not given assurances that it will not use Lien Law Article 3-A trust assets to pay for the insurance policy. Debtor Blue Diamond's motion and the information submitted in support of that motion are insufficient to allow the Court to approve the insurance premium financing.

13. Debtor Blue Diamond has not provided assurances that its post-petition obligations to the Creditor Funds will be paid. It has not given assurances that if the Court approves its motion, Lien Law Article 3-A trust assets will be available to fully pay its pre-petition

{B0291328.1}                                4

and post-petition obligations to the Creditor Funds and other Lien Law trust fund beneficiaries.

**WHEREFORE**, Creditor Funds respectfully request that this Court deny the Debtor's motion or, in the alternative, authorize such insurance premium financing only upon a directive that the Debtor shall not use Lien Law Article 3-A trust assets to pay for that financing, a directive that it provide an accounting of the monies earned and received in connection with each of its construction projects, and a directive that Debtor shall timely remit all post-petition obligations to the Creditor Funds.

**I have read this Affirmation in its entirety. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.**

Dated:  November 2, 2022

*/s/ Jennifer A. Clark*
Jennifer A. Clark