# EXHIBIT "A"

# Confessed Judgment Note



# Sheet Metal Workers' National Pension Fund

## <u>Confessed Judgment Note</u>

This Confessed Judgment Note ("Note") is entered into by Sheet Metal Workers' National Pension Fund ("NPF"), Sheet Metal Workers' International Scholarship Fund ("SMWISF"), Sheet Metal Occupational Health Institute Trust ("SMOHIT"), National Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry ("NEMIC"), International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), and National Stabilization Agreement of the Sheet Metal Industry ("SASMI") (collectively, Funds"), and BLUE DIAMOND AIR SYSTEMS, INC (formerly known as BLUE DIAMOND SHEET METAL, INC.) ("Company") and Al LaBella ("Individual" and together with Company, "Makers"), jointly and severally.

WHEREAS, Makers represent that they are unable to pay immediately all outstanding contributions and attendant charges due the Funds;

WHEREAS, Makers confess judgment and represent that this Note is necessary to secure payment and permit them to pay in full all contributions due the Funds;

WHEREAS, Makers enter into this Note and agree to make the payment required herein in exchange for the Funds' forbearance from filing suit or from taking other legal actions to collect the delinquency;

WHEREAS, the Funds enter into this Note in reliance on the representations made by the Makers on their ability to pay;

WHEREAS, Makers affirm and assert that they are not entering into or knowingly inducing the Funds' participation in this Note under any false pretenses, false representations, or fraudulent statements as defined by 11 U.S.C.A. § 523(a)(2);

WHEREAS, Makers understand that if this agreement is entered with knowledge of the Makers' inability to make any and all payments due under the Note that such conduct may affect the ability to discharge the obligations contained or recited in this note under any chapter of Bankruptcy;

NOW, WHEREFORE, the Funds and the Makers declare and agree as follows.


1.      The Company shall be obligated to submit weekly remittance reports and monthly contributions to the Funds.   The Company's obligations arise under the terms of one or more collective bargaining agreement(s) with International Association of Sheet Metal, Air, Rail and Transportation Workers Local Union No. 028 ("Local"), the Agreements and Declarations of Trust establishing the Funds (as may be amended from time-to-time), the Procedures for the Collection of Contributions adopted by the Funds (as may be amended from time-to-time), Section 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and Section 301 of the Labor Management Relations Act.

2.      The Company failed to timely make all monthly contributions to the Funds for the period June 2022 to July 2022 (the "Contributions"). The Makers hereby agree that the Company owes the Funds $503,879.21 (the "Total Amount Due"), which is broken down as follows:

| Name | Contributions | Late Fees | Total |
|------|--------------|-----------|-------|
| SMOHIT | $501.71 | $31.75 | $533.46 |
| NEMI | $752.57 | $47.63 | $800.20 |
| ITI | $3,010.20 | $190.49 | $3,200.69 |
| NPFA | $399,068.35 | $25,189.27 | $424,257.62 |
| SASMI | $70,629.05 | $4,458.19 | $75,087.24 |
| **Total** | **$473,961.88** | **$29,917.33** | **$503,879.21** |

a.      Contributions due from June 2022 to July 2022 total $473,961.88.

b.      Late fees on the Contributions total $29,917.33.   The late fees include (i) accrued interest on the principal amount calculated from the date the payments were due until 9/1/2022, at 0.0233% per day, compounded daily (8.5% per annum), and (ii) liquidated damages in the amount of 10% of delinquent or late-paid contributions.

3.      In consideration for the payment terms evidenced by this Note, Makers shall pay **$504,129.21** in 20 weekly installments with interest calculated on the declining balance at 8.50% per annum, compounded daily.   This includes a down payment of $0.00 and a $300.00 charge for Admin Fees.   The initial payment of $25,744.62 shall be paid on or before 9/2/2022.   The remaining 19 installments shall be paid on or before the first four Fridays of each month thereafter through 1/27/2023. An amortization schedule is attached hereto as Exhibit 1.

4.      Company hereby grants the Funds a valid and perfected first priority secured interest in accordance with the executed Security Agreement and the UCC Financing Statement attached hereto as Exhibit 2.

5.      All payments required by this Note shall be sent via wire transfer in accordance with the wire instructions attached hereto as Exhibit 3.

6.      In addition to the payments set forth in Paragraph 3, the Company shall submit, when due, all current monthly contributions and submit weekly remittance reports electronically via the Funds' secure online payment system, for every month thereafter for as long as the Company is obligated to do so under the terms of the Company's collective bargaining agreement(s) and consistent with the Agreements and Declarations of Trust governing the Funds.   Notwithstanding any language to the contrary herein, if the Company fails to remit timely its monthly contributions and is assessed interest or interest and liquidated damages, the Funds, at their sole discretion, may offset such contributions and late fees with payments made pursuant to this Agreement. The Funds, at their sole discretion, may continue to offset payments made pursuant to this Note to late fees, future monthly contributions, Exit Contributions or Withdrawal Liability, or any other amounts that may become due by the Company. The Funds will not deem this Note to be satisfied if any amounts remain due and owing by the Company at the time of receipt of final payment under this Note.

7.      Individual personally guarantees the payment of the Total Amount Due, current and future contributions owed to the Funds and must pay any due and unpaid contributions to the Funds in an Event of Default.   Furthermore, Individual personally guarantees payment of all other amounts owed to the Fund, including but not limited to, payment for withdrawal liability or exit contributions, in accordance with the Guaranty Agreement attached hereto as Exhibit 4. Individual acknowledges and agrees that such personal guarantees in the Guaranty Agreement shall survive the termination of this Note and shall be applicable for so long as the Company and/or any alter-ego or successor is potentially liable for any amounts owed to the Funds.

8.      For each payment not received by the Funds on or before the date the payment is due,

Makers shall pay a late fee of Twenty-five Dollars ($25.00). Additionally, the Funds shall be entitled to collect interest on any late payment at the rate of 8.50% per annum, compounded daily, for the period dating from the date the payment is due through the date of actual payment.

9.      Makers will immediately be in default under the Note if any of the following occur (each, an "Event of Default"):

        a.      Makers fail to timely remit $25,744.62 on 9/2/2022;

        b.      Makers fail to timely remit $102,978.47 in weekly installment payments due under the amortization schedule attached as Exhibit 1 before the last day of each calendar month;

        c.      Makers fail to pay the late fee of $25.00 or interest for any installment payment not timely received by the Funds;

        d.      Any instrument of payment of any obligation under this Note is dishonored by the bank when presented for payment;

        e.      The Company fails to timely submit even one required monthly contribution or weekly remittance report to the Funds via the Funds' secure online payment system;

        f.      The Company fails to submit to any requested audit of the Company's wage, payroll, personnel, and other such records that are determined by the Funds to be necessary to ascertain whether the Company complied with its obligations to remit contributions to the Funds;

        g.      Any representation, statement, or warranty made by Makers in this Note is determined by the Funds to be incorrect in any material respect when made;

        h.      Maker(s) are unable, or admit in writing an inability, to pay all Maker(s) debts as they become due;

        i.      A receiver, trustee, or liquidator is appointed with respect to all or a substantial portion of the assets of either Maker;

        j.      Maker(s) begins proceedings under the United States Bankruptcy Code or under state insolvency law, if such proceedings are instituted against Maker(s), or if any attachment is issued or consummated against any of Maker's(s') property; and

        k.      Makers default under any other note or agreement to which Makers and the Funds are parties and Makers fail to cure such default within the applicable cure period.

10.     If the Event of Default described in Paragraph 9(a)-(k) any and all conditional waivers are deemed revoked and the Funds without further notice may initiate the confession procedures described herein, the execution or levy on bonds or liens, the confession of any prior notes, and/or any other legal action.

        a.      The amount recoverable by the Funds shall be the Total Amount Due plus any conditionally waived amounts, less payments applied against the Total Amount Due, plus interest at the rate of 8.5% per annum, compounded daily, calculated from the date of default to the date of payment.

        b.      The Funds shall be entitled to reasonable attorneys' fees and costs incurred in enforcing this Note.  The Makers agree that reasonable attorneys' fees and costs can be assessed, at the discretion of the Funds, either as 25% of the outstanding debt owed at the time

this Note is confessed or as the actual reasonable attorneys' fees and costs incurred to confess and execute upon this Note, to be shown by a declaration of counsel.

        c.      The Makers grant power of attorney to Heather Sutton Mooneyham, Legal Counsel to the Sheet Metal Workers' National Pension Fund, Diana Migliaccio Bardes, Esquire, Andrew Keith Lin, Esquire, or any other attorney of Mooney, Green, Saindon, Murphy & Welch, PC to act as the Makers' attorney-in-fact and confess judgment on behalf of the Makers.

        d.      The Makers authorize the attorney-in-fact to appear on its behalf and confess judgment against the Makers in the amount then due under the terms of this Note in the Alexandria Circuit Court, located in Alexandria, Virginia.

11.      Makers affirm that they enter into this Note with the expectation that they will be able to repay the amounts due in accordance with Exhibit 1 and have no intention of filing bankruptcy.   Makers agree that the filing of any bankruptcy petition within six (6) months of this Note's execution will constitute prima facie evidence of their intent to knowingly induce the Funds' participation in this Note under false pretenses, false representations, and fraudulent statements, and thereby exempt from discharge amounts due from this Note.   Additionally, in the Event of Default described in Paragraph 9(i), Makers shall provide personal and business financial institution statements for the six-month period preceding the bankruptcy petition date(s).

12.      No provision of this Note shall be construed to prevent the Funds from immediately proceeding with any and all methods of collection, including but not limited to, requesting that the Local immediately withhold labor.

13.      Makers shall submit to an audit of Company's wage, payroll, personnel, and other such records that are determined by the Funds to be necessary to ascertain whether the Company complied with its obligations to remit contributions to the Funds.   Should any audit discover any underpayment or nonpayment of contributions, Makers shall pay all contributions, interest, and liquidated damages found to be due, as well as all audit expenses, attorneys' fees and costs incurred in enforcing this provision.

14.      Acceptance by Funds of one or more late or partial payments shall not constitute a waiver of the Funds' right to demand that payment be timely and in full for all subsequent payments. Failure or delay by the Funds to enforce this provision shall not constitute a waiver of Funds' right to collect all sums due under this Note, any collective bargaining agreement, ERISA, or other applicable law.   Additionally, waiver by Funds of any condition of default shall not constitute a waiver of any subsequent condition of default.

15.      Makers waive formal presentment, demand, protest, notice of protest, and other formalities that could be required of Funds in the event of a default by Makers.

16.      If required by any court, an affidavit executed by any authorized representative of the Funds shall constitute conclusive proof of a claim for and the amount of any sums due to the Funds as contributions, late fees, and attorneys' fees and costs, in the event that judicial enforcement of this Note becomes necessary.

17.      Makers acknowledge if the Company employs any Owner-Members, such Owner-Members may cease to be working in Covered Employment pursuant to the terms of the NPF Plan Document. Makers acknowledge that the calculation of any benefits associated with an Owner-Member pursuant to the SASMI Amended and Restated Active Rules and Regulations or the SASMI Amended and Restated Retiree Rules and Regulations shall be reduced by any amounts owed to the Funds, including the amounts due pursuant to this Note. Makers agree and acknowledge that this reduction cannot be avoided through any bankruptcy discharge of the debts owed by Makers to the Funds. Owner-Member benefits under other Funds are subject to the rules of the respective Funds.

18.      Should any provision of this Note be determined by a court of competent jurisdiction to

be void or unenforceable, the remaining provisions will remain valid and enforceable at the discretion of the Funds.

19.     This Note is deemed executed in the Commonwealth of Virginia and is governed by the laws of the Commonwealth of Virginia, except as required by ERISA or other applicable federal law. The parties further agree that the courts of the Commonwealth of Virginia or the United States District Court for the Eastern District of Virginia shall have exclusive jurisdiction to resolve any and all disputes arising out of or in connection with this Note.

20.     This Note sets forth the entire agreement of the parties concerning the Funds' forbearance from further action to collect the delinquency and supersedes any other written or oral understandings.   This Note may not be changed orally, but may be changed only by a writing signed by all of the parties hereto.

21.     This Note shall be binding upon all parties hereto, and their subsidiaries, affiliates, successors,     assigns, heirs, executors, agents, servants, representatives, employees, shareholders, officers, and directors.

22.     The persons executing this Note on behalf of the parties are duly authorized to execute this Note and to bind the respective parties to all of its terms.

**IMPORTANT NOTICE**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.** Va. Ann. Code. § 8.01-
433.1.

**In Witness Whereof,** the parties have caused this Note to be executed by their duly authorized representatives on the dates indicated below.

MAKERS:

Dated: _9/9/2022_

_____
Al LaBella, individually

Certification by Notary:
Subscribed and sworn before me on this ___9ᵗʰ___ day of _September_, 2022

_Nicole Nitz_
Notary Public

My commission expires: _1/6/2024_

Dated: _9/9/2022_

```
NICOLE NITZ
Notary Public - State of New York
No. 01NI6402497
Qualified in Suffolk County
My Comm. Expires Jan. 6, 2024
```

_____
By: Al LaBella, BLUE DIAMOND AIR SYSTEMS, INC.
(f/k/a BLUE DIAMOND SHEET METAL, INC.)

Corporate Secretary

Corporate Seal Here

Certification by Notary:

Subscribed and sworn before me on this ___9ᵗʰ___ day of _September_, 2022

_Nicole Nitz_
Notary Public

My commission expires: _1/6/2024_

```
NICOLE NITZ
Notary Public - State of New York
No. 01NI6402497
Qualified in Suffolk County
My Comm. Expires Jan. 6, 2024
```

-----------------------------------------------------------------------

For the Funds:

Dated: _9-26-2022_

_____
By:  Lori Wood, Executive Director
Sheet Metal Workers' National Pension Fund

# Exhibit 1

## Summary of Payments and Amortized Interest

| Number | Due Date | Previous | Principal | Amortized Interest | Payment | Balance |
|---|---|---|---|---|---|---|
| 1 | 9/2/2022 | $504,129.21 | $24,726.46 | $1,018.16 | $25,744.62 | $479,402.75 |
| 2 | 9/9/2022 | $479,402.75 | $24,776.87 | $967.74 | $25,744.62 | $454,625.88 |
| 3 | 9/16/2022 | $454,625.88 | $24,827.49 | $917.12 | $25,744.62 | $429,798.38 |
| 4 | 9/23/2022 | $429,798.38 | $24,878.04 | $866.58 | $25,744.62 | $404,920.34 |
| 5 | 10/7/2022 | $404,920.34 | $24,929.90 | $814.72 | $25,744.62 | $379,990.44 |
| 6 | 10/14/2022 | $379,990.44 | $24,980.47 | $764.15 | $25,744.62 | $355,009.97 |
| 7 | 10/21/2022 | $355,009.97 | $25,031.11 | $713.51 | $25,744.62 | $329,978.87 |
| 8 | 10/28/2022 | $329,978.87 | $25,081.83 | $662.79 | $25,744.62 | $304,897.04 |
| 9 | 11/4/2022 | $304,897.04 | $25,128.57 | $616.05 | $25,744.62 | $279,768.47 |
| 10 | 11/11/2022 | $279,768.47 | $25,179.80 | $564.82 | $25,744.62 | $254,588.67 |
| 11 | 11/18/2022 | $254,588.67 | $25,231.11 | $513.51 | $25,744.62 | $229,357.56 |
| 12 | 11/25/2022 | $229,357.56 | $25,282.50 | $462.12 | $25,744.62 | $204,075.06 |
| 13 | 12/2/2022 | $204,075.06 | $25,327.29 | $417.33 | $25,744.62 | $178,747.77 |
| 14 | 12/9/2022 | $178,747.77 | $25,379.69 | $364.93 | $25,744.62 | $153,368.08 |
| 15 | 12/16/2022 | $153,368.08 | $25,432.19 | $312.43 | $25,744.62 | $127,935.90 |
| 16 | 12/23/2022 | $127,935.90 | $25,484.77 | $259.85 | $25,744.62 | $102,451.13 |
| 17 | 1/6/2022 | $102,451.13 | $25,531.18 | $213.44 | $25,744.62 | $76,919.95 |
| 18 | 1/13/2022 | $76,919.95 | $25,585.53 | $159.09 | $25,744.62 | $51,334.42 |
| 19 | 1/20/2022 | $51,334.42 | $25,639.95 | $104.67 | $25,744.62 | $25,694.47 |
| 20 | 1/27/2022 | $25,694.47 | $25,694.47 | $50.15 | $25,744.60 | $0.00 |
| **Total** | | | **$504,129.21** | **$10,763.16** | **$514,892.35** | |

**EXHIBIT 2—Blue Diamond UCC Lien**

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT made this ___9th___ day of ~~August~~ *Sept.*, 2022, under the laws of the State of __NY__, by and between BLUE DIAMOND AIR SYSTEMS, INC. (formerly known as BLUE DIAMOND SHEET METAL, INC.) ("Blue Diamond"] and Al LaBella ["LaBella"] (hereinafter Blue Diamond and LaBella are collectively referred to as the "Debtors")   and the SHEET METAL WORKERS' NATIONAL PENSION FUND, INTERNATIONAL TRAINING INSTITUTE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY, NATIONAL STABILIZATION AGREEMENT OF SHEET METAL INDUSTRY, SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION SCHOLARSHIP FUND, NATIONAL ENERGY MANAGEMENT INSTITUTE COMMITTEE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY, AND SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST (herein these six (6) entities are collectively referred to as the "Secured Party").

Blue Diamond Air Systems, Inc. maintains its offices and principal place of business at 1165 Station Road, Medford, County of Suffolk, New York 11763.

Al LaBella maintains his residence at ___79   Handsome Ave___, County of ___Suffolk___, New York ___11763___

### RECITALS

The Secured Party and the Debtors have entered into and executed a Confessed Judgment Note (hereinafter the "Note"), dated ___Sept. 9___, 2022, with respect to the obligations of the Debtors to make certain payments to Secured Party for fringe benefit contributions, interest, liquidated damages, and attorneys' fees and costs as set forth under the Note (the "Obligation").   In order to secure the Obligation of Debtors to Secured Party under the terms of the Note, Debtors have agreed to grant a security interest in certain of Debtors' assets in the favor of Secured Party and to perform certain other obligations for the benefit of Secured Party, upon and in accordance with the terms of this Security Agreement as hereinafter set forth.

NOW THEREFORE, in order to secure the payment of the Obligation owed by Debtors, the Debtors and Secured Party hereby agree as follows:

1.    Grant of Security Interest. As security for the payment in full of the amount of the Obligation,

Blue Diamond and LaBella hereby grant, assign, pledge, transfer and convey to Secured Party a continuing security interest in all of the rights, now existing or hereafter acquired, of Blue Diamond and LaBella in and arising in any manner out of: (a) any contract, including, but not limited to, any monies due therefrom; (b) all machinery, equipment, plant, tools, inventory and materials and the tools, equipment and machinery set forth on Exhibit "A" attached hereto; (c) subcontracts and purchase orders; (d) surety bonds, guarantees or other undertakings supporting any contracts, subcontracts or purchase orders; (e) any actions, causes of action, claims or demands; (f) all monies due or to become due on any policy of insurance including, but not limited to, premium refunds; (g) any real or personal property now owned or hereafter acquired; (h) all tangible and intangible assets, including, but not limited to, accounts receivable, notes receivable, chooses in action and proceeds in collateral.

All real and personal property and tangible and intangible assets referenced in this paragraph No. 1 are collectively referred to as the "Collateral".

2.      Debtors' Representations and Warranties. Debtors represent that the place where they keep their records concerning the Collateral is at the principal place of business address and resident addresses specified above and that all of their places of business and resident addresses are in the county set forth above. Debtors will immediately advise Secured Party in writing of the opening of any new place of business or the closing of any of their existing places of business, and of any change in the location of the places where its records concerning the Collateral are kept.

Debtors further represent and warrant and, so long as any of the Obligation remains unpaid, they represent and warrant that:

A. Debtor Blue Diamond Air Systems, Inc. is a Corporation organized and existing in good standing under the laws of the State of New York.

B. Debtors have the power and authority: (i) to conduct their business as now being conducted, (ii) to own the Collateral and (iii) to enter into, execute and deliver this Security Agreement and perform their obligations hereunder.

C. The execution, delivery and/or performance of the Debtors of this Security Agreement will not constitute a violation of, or result in, a default under any applicable law, government rule or regulation or any agreement, instrument, document, order, judgment or decree to which Debtors are bound.

D. All accounts and contract rights are genuine and what they purport to be.

E. All accounts and contract rights represent a bona fide transaction and are enforceable according to the contract underlying the account or contract rights.

F. With respect to accounts and contract rights, the amount shown on Debtors' books and on any invoice or statement delivered to Secured Party is correct and duly owing to Debtors.

G. No accounts or contract rights have been transferred or assigned to any other person.

H. No set-off or counterclaim to any account or contract rights exists, and no agreement has been made with any person under which any deduction or discount may be claimed, except regular discounts allowed by Debtors for prompt payment of accounts.

3.    Debtors' Covenants. So long as any of the Obligation to Secured Party remains unpaid:

A. Debtors will not in the future, without the prior written consent of Secured Party, pledge or grant any security interest in any of the Collateral to anyone except Secured Party, or permit any lien or encumbrance to attach thereto, or any levy to be made thereon, or any financing statement (except Secured Party's financing statement) to be filed with respect thereto.

B. Debtors will: (a) subject to Secured Party's exercise of their rights with respect to the Collateral, collect their accounts only in the ordinary course of business; (b) when requested, give Secured Party an assignment, in a form acceptable to Secured Party, of the Collateral; (c) furnish Secured Party at such intervals as Secured Party may prescribe with a certificate (in such form as Secured Party may, from time to time, specify) containing such information with respect to   the Collateral as Secured Party may require; (d) keep accurate and complete records of the Collateral in accordance with generally accepted accounting principles consistently applied; (e) make no change in the Collateral; (f) receive as the sole property of Secured Party and hold in trust for Secured Party all monies, checks, notes, drafts and other property (herein called "items of payment") representing the proceeds of the Collateral in which Secured Party has a security interest; (g) pay and discharge all due taxes, levies and other charges on the Collateral; (h) if insurable, keep its Collateral insured for the benefit of Secured Party (which shall be designated as loss payee) in such amounts, with such insurance companies and against such risks as may be satisfactory to Secured Party, deliver certificates evidencing such insurance to Secured Party, and Debtors hereby assign to Secured Party all right to receive proceeds of such

insurance.

C.  Debtors will also, if required by Secured Party: (a) mark their records evidencing their accounts and contract rights in a manner satisfactory to Secured Party so as to indicate the security interest of Secured Party hereunder; (b) furnish to Secured Party any invoices, shipping documents, schedules, purchase orders, delivery receipts, contracts or other documents representing or relating to any of the Collateral; (c) inform Secured Party immediately of the rejection of goods or services, delay in delivery or performance, or claims made, in regard to the Collateral; (d) execute financing statements, notices, affidavits or other instruments, in form satisfactory to Secured Party, to pay the cost of filing the same in any public office deemed advisable by Secured Party and pay the cost of searching the records of any such office; (e) furnish to Secured Party all information received by Debtor affecting the financial statements   of the Debtors, or its Collateral; (f) immediately   notify Secured Party if any of the Collateral arises out   of contracts for   the improvement   of real property, deals with a public improvement or is with the United States or any department, agency or instrumentality thereof, and execute any instruments and take any steps required by Secured Party in order that all monies due or to become due under any such contract shall be assigned to Secured Party and notice thereof be given as required by law; (g) furnish to Secured Party such financial statements, reports, certificates, list of purchasers of goods and services (showing names, addresses and amounts owing) and other data concerning the Collateral and other matters as Secured Party may, from time to time, specify; (h) permit Secured Party or its nominee to examine all of Debtors' records relating to the Collateral at any time, and to make extracts therefrom; and (j) fully cooperate with Secured Party in its rights and methods of verification of the Collateral.

4.      Secured Party's Rights. Secured Party shall have the right at any time and from time to time without notice to Debtors: (a) to insure the Collateral at Debtors' expense, if Debtors fail to do so; (b) to notify all appropriate parties that the Collateral, or any part thereof, has been assigned to Secured Party; and (c) to verify any of the Collateral in any manner Secured Party deems appropriate.

5.      Events of Default. The following events shall be "Events of Default" under this Security Agreement:

A.  Failure of Debtors to make any payment, when due, of the Obligation.

B.  Failure of Debtors to perform any term, condition, or covenant required of Debtors under this

Security Agreement or the Agreement.

      C.  Any representation or warranty made by Debtors to Secured Party under this Security Agreement, or in any report, schedule, financial statement or other writing furnished by Debtors to Secured Party under this Security Agreement which is false, incorrect or erroneous in any material respect.

      D.  Failure of Debtors to pay their debts when they become due or if Debtors terminates their business, dissolves or if any proceedings under any bankruptcy or insolvency law are commenced by or against Debtors.

      6.     <u>Remedies Upon Default</u>. Upon the occurrence of any Event of Default, the Secured Party may declare any or all of the Obligation to be immediately due and payable, and shall have all of the rights and remedies of a secured party under the Uniform Commercial Code of the State of New York, all of which rights and remedies shall be cumulative and none exclusive, to the extent permitted by law, in addition to all other rights and remedies contained in this Security Agreement or the Agreement.

      7.     <u>Waivers</u>.

      A.  Debtors hereby waive presentment, demand, notice of dishonor, protest, notice of protest and all other notices to which Debtors may be entitled to the extent such waiver is permitted by law.

      B.  No delay or omission on the part of Secured Party shall be deemed a waiver on the part of Secured Party to any of its rights with respect to the Collateral or otherwise.

      8.     <u>Expenses</u>. Debtors agree to pay Secured Party for all reasonable expenses incurred by Secured Party, including reasonable counsel and collection costs, in protecting the Collateral or enforcing its rights in the Collateral or otherwise under this Security Agreement.

      9.     <u>Termination</u>. Upon the payment in full of all the Obligation due by Debtors to Secured Party, the Secured Party at Debtors' request shall release the Collateral from its security interest granted and created by this Security Agreement and execute such release or termination statements as may be necessary in order to effectuate such release and/or termination.

      10.     <u>Miscellaneous</u>.

      A.  Complete Agreement and Modification.

      This Security Agreement represent the complete agreement between the parties hereto

superceding all prior agreements, written and oral, with respect to the subject matter herein. This Security Agreement may not be modified, altered or amended, except by an agreement in writing signed by the Debtors and the Secured Party. This Security Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, this Security Agreement has been duly executed as of the date and year first written above.

BLUE DIAMOND AIR SYSTEMS, INC.

By: _____
Al LaBella, as _Presiden†_ of
Blue Diamond Air Systems, Inc. (f/k/a Blue Diamond Sheet Metal, Inc.)

STATE OF NEW YORK        )
COUNTY OF SUFFOLK        )

On the _9th_ day of _September_, 2022 before me personally came Al LaBella, to me known, and who, being by me duly sworn, did depose and say that he resides at _1165 Station Rd. Medford NY 11763_ that he is the _President_ of Blue Diamond Air Systems, Inc., the Corporation described herein, that he is authorized to executed the foregoing instrument on behalf of the Corporation, as _President_ thereof, and he has signed his name hereto as _President_ of the Corporation.

_Nicole Nitz_

> NICOLE NITZ
> Notary Public - State of New York
> No. 01NI6402497
> Qualified in Suffolk County
> My Comm. Expires Jan. 6, 2024

AL LABELLA

By: _____
Al LaBella, Individually

STATE OF NEW YORK        )
COUNTY OF _Suffolk_        )

On the _9th_ day of _September_, 2022 before me personally came Al LaBella, to me known, and who, being by me duly sworn, did depose and say that he resides at _1165 Station Rd. Medford NY 11763_ _____, that he is the individual described herein, that he is authorized to executed the foregoing instrument, and he has signed his name hereto in his individual capacity.

_Nicole Nitz_

> NICOLE NITZ
> Notary Public - State of New York
> No. 01NI6402497
> Qualified in Suffolk County
> My Comm. Expires Jan. 6, 2024

**EXHIBIT 4**

**PERSONAL GUARANTY**

I, Al LaBella ("Individual"), hereby warrant in my individual capacity that by this personal guaranty that both Individual and the Company are jointly and severally liable for the repayment of the Note and that Individual is personally guaranteeing: (1) the Company's performance under the Note; and (2) the Company's continued timely payment of all outstanding debt, liabilities, and obligations of Company in connection with its participation in the Funds, including but not limited to, outstanding contributions and late fees owed to the Funds, collection costs, and withdrawal liability installments.

Individual agrees this is a guaranty of performance and payment, and thus the Funds can enforce this guaranty against you even if we have not exhausted our remedies against the Company. You agree this is a continuing guaranty, and understand that if you leave the employment of the Company, you will continue to be personally liable for all debt, liabilities, and obligations of the Company to the Funds. This includes debt, liabilities and obligations not yet in existence now or at the time you leave the company, including but not limited to, current and future contributions owed to the Funds, withdrawal liability or exit contributions as stated in the Note. This guaranty shall remain in place for so long as the Company, and/or any alter-ego or successor, is potentially liable for any amounts owed to the Funds, including any collection costs and reasonable attorneys' fees.  Individual acknowledges that even if the debt is reduced to zero dollars ($0.00), it shall not constitute a termination of the guaranty.

Individual hereby waives any suretyship defenses or any other law that requires the Funds to exhaust its' remedies against the Company prior to seeking recovery from Individual. Individual further waives any notice requirements or notices, including but not limited to: notice of change in terms under the agreement, notice of non-payment by the Company, or any demand or notice of any kind relating to collection or the recourses the Funds intend to seek under the agreement or applicable law.

AL LABELLA

By: _____
Al LaBella, Individually

STATE OF NEW YORK          )
COUNTY OF Suffolk          )

On the 9th day of September, 2022 before me personally came Al LaBella, to me known, and who, being by me duly sworn, did depose and say that he resides at 1165 Station Rd. Medford, NY 11763, that he is the individual described herein, that he is authorized to executed the foregoing instrument, and he has signed his name hereto in his individual capacity.

```
NICOLE NITZ
Notary Public - State of New York
No. 01NI6402497
Qualified in Suffolk County
My Comm. Expires Jan. 6, 2024
```

Nicole Nitz

0442337          2022 Sep 26 PM06:29

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Heather Mooneyham, 703-739-7009

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Sheet Metal Workers' National Pension Fund
3180 Fairview Park Drive, Suite 400
Falls Church, VA 22042, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a ORGANIZATION'S NAME | Blue Diamond Air Systems, Inc. (f/k/a Blue Diamond Sheet Metal, Inc.) | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS 1165 Station Road | CITY Medford | STATE NY | POSTAL CODE 11763 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION United States | 1g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

2 ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME LaBella | FIRST NAME Albert | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS 79 Handsome Ave | CITY Suffolk | STATE NY | POSTAL CODE 11763 | COUNTRY USA |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME Sheet Metal Workers' National Pension Fund | | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS 3180 Fairview Park Drive, Suite 400 | CITY Falls Church | STATE VA | POSTAL CODE 22042 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:

All rights, now existing or hereafter acquired, in and arising in any manner out of: (a) any contract, including, but not limited to, any monies due therefrom; (b) all machinery, equipment, plant, tools, inventory and materials and the tools, equipment and machinery set forth on Exhibit "A" attached hereto; (c) subcontracts and purchase orders; (d) surety bonds, guarantees or other undertakings supporting any contracts, subcontracts or purchase orders; (e) any actions, causes of action, claims or demands; (f) all monies due or to become due on any policy of insurance including, but not limited to, premium refunds; (g) any real or personal property now owned or hereafter acquired; and (h) all tangible and intangible assets, including, but not limited to, accounts receivable, notes receivable, chooses in action and proceeds in collateral.

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable]    7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]    ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-202209268450493