UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In Re:                                                    Chapter 7

Blue Diamond Air Systems, Inc.,                           Case No. 822-72698-AST

        Debtor.

-------------------------------------------------------X

Marc A. Pergament, Chapter 7 Trustee of the              Adv. Proc.
Bankruptcy Estate of Blue Diamond Air
Systems, Inc.,

        Plaintiff,                              <u>Complaint</u>

    - against -

Douglas Gene Belz a/k/a Douglas Belz,
Stephen DiMeglio and James Edwin Dvorak
a/k/a James Dvorak,

        Defendants.

-------------------------------------------------------X

        Marc A. Pergament, Chapter 7 Trustee ("Trustee" or "Plaintiff") of the Bankruptcy

Estate of Blue Diamond Air Systems, Inc. ("Debtor"), by his attorneys, Weinberg, Gross &

Pergament LLP, as and for his Complaint herein, respectfully alleges and represents to this Court as

follows:

        1.     This action arises under 11 U.S.C. §§ 541, 542, 544, 547,548, 550 and 551

and Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure, § 270 et seq. of the New

York Uniform Voidable Transactions Act ("UVTA") and New York Business Corporation Law

Section 720.

2.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 as this action arose in and under the Debtor's pending Chapter 7 case.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

4.    This complaint is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.    This is an action for money damages and for the avoidance and recovery of preferences and fraudulent transfers of the Debtor's property.

6.    In the event that this Court determines that the causes of action, as alleged herein, is not a core proceeding, Plaintiff consents to the entry of final orders and judgment by this Court determining such causes of action.

THE PARTIES

7.    Plaintiff is the Chapter 7 Trustee of the Debtor's Estate.

8.    Upon information and belief, at all relevant times herein, Defendant, Douglas Gene Belz a/k/a Douglas Belz ("Defendant Belz"), is an individual residing at 22 South Gillette Avenue, Bayport, New York 11705.

9.    Upon information and belief, at all relevant times herein, Defendant, Stephen DiMeglio ("Defendant DiMeglio"), is an individual residing at 755 Harbor Lane, Cutchogue, New York 11935.

10.    Upon information and belief, at all relevant times herein, Defendant, James Edwin Dvorak a/k/a James Dvorak, ("Defendant Dvorak"), is an individual residing at 179 Oakwood Avenue, Bayport, New York 11705.

11.    This case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on October 4, 2022 (the "Petition Date").

12.     By Order of the Bankruptcy Court entered on February 10, 2023, the case was converted to a Chapter 7 liquidation proceeding.

13.     Plaintiff, Marc A. Pergament, is the Chapter 7 Trustee, duly qualified and acting as such pursuant to 11 U.S.C. §702(d).

14.     Prior to conversion of this case to Chapter 7, the Debtor manufactured, installed, serviced and maintained commercial HVAC systems in the New York City Metropolitan area.

BACKGROUND

15.     Upon information and belief, Defendant Belz was a shareholder and director of an entity known as Blue Diamond Sheet Metal Inc.

16.     Upon information and belief, Defendant Belz owned 10 shares in Blue Diamond Sheet Metal Inc.

17.     Upon information and belief, Defendant Belz was a shareholder and director of an entity known as Diam-N-Blu Mechanical Corp.

18.     Upon information and belief, Defendant Belz owned 5 shares in Diam-N-Blu Mechanical Corp.

19.     Upon information and belief, Defendant Belz was a shareholder and director of an entity known as Mirage Mechanical Systems, Inc.

20.     Upon information and belief, Defendant Belz owned 10 shares in Mirage Mechanical Systems, Inc.

21.     Upon information and belief, Defendant DiMeglio was a shareholder and director of an entity known as Blue Diamond Sheet Metal Inc.

22.     Upon information and belief, Defendant DiMeglio owned 10 shares in Blue Diamond Sheet Metal Inc.

23.     Upon information and belief, Defendant DiMeglio was a shareholder and director of an entity known as Diam-N-Blu Mechanical Corp.

24.     Upon information and belief, Defendant DiMeglio owned 5 shares in Diam-N-Blu Mechanical Corp.

25.     Upon information and belief, Defendant DiMeglio was a shareholder and director of an entity known as Mirage Mechanical Systems, Inc.

26.     Upon information and belief, Defendant DiMeglio owned 10 shares in Mirage Mechanical Systems, Inc.

27.     Upon information and belief, Defendant Dvorak was a shareholder and director of an entity known as Blue Diamond Sheet Metal Inc.

28.     Upon information and belief, Defendant Dvorak owned 10 shares in Blue Diamond Sheet Metal Inc.

29.     Upon information and belief, Defendant Dvorak was a shareholder and director of an entity known as Diam-N-Blu Mechanical Corp.

30.     Upon information and belief, Defendant Dvorak owned 5 shares in Diam-N-Blu Mechanical Corp.

31.     Upon information and belief, Defendant Dvorak was a shareholder and director of an entity known as Mirage Mechanical Systems, Inc.

32.     Upon information and belief, Defendant Dvorak owned 10 shares in Mirage Mechanical Systems, Inc.

33.     Upon information and belief, Defendant Belz, Defendant DiMeglio and Defendant Dvorak also held a membership interest in a limited liability company known as Blue Station Realty, LLC.

34.     On or about July 1, 2020, Defendant Belz, Defendant DiMeglio and Defendant Dvorak entered into an Equity Security Purchase Agreement wherein they consented to a leveraged buy-out transaction (the "LBO Transaction") wherein they agreed to sell their ownership and membership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp., Mirage Mechanical Systems, Inc. and Blue Station Realty, LLC. to the remaining shareholders and/or members of these entities, Al LaBella and Meghan LaBella.

35.     Upon information and belief and according to the terms of the Equity Security Purchase Agreement, Defendant Belz was to receive $2,850,000.00 for his ownership and membership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp., Mirage Mechanical Systems, Inc. and Blue Station Realty, LLC.

36.     Upon information and belief and according to the terms of the Equity Security Purchase Agreement, Defendant DiMeglio was to receive $2,850,000.00 for his ownership and membership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp., Mirage Mechanical Systems, Inc. and Blue Station Realty, LLC.

37.     Upon information and belief and according to the terms of the Equity Security Purchase Agreement, Defendant Dvorak was to receive $2,850,000.00 for his ownership and membership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp., Mirage Mechanical Systems, Inc. and Blue Station Realty, LLC.

38.     On or about December 22, 2020, Defendant Belz, Defendant DiMeglio and Defendant Dvorak sold their ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to Al LaBella and Meghan Labella.

39.     Upon information and belief, Defendant Belz sold his interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to Al LaBella and Meghan Labella, and Defendant Belz was paid the sum of $1,482,750.00.

40.     Upon information and belief, Defendant DiMeglio sold his interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to Al LaBella and Meghan Labella, and Defendant DiMeglio was paid the sum of $1,482,750.00.

41.     Upon information and belief, Defendant Dvorak sold his interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to Al LaBella and Meghan Labella, and Defendant Dvorak was paid the sum of $1,482,750.00.

42.     Upon information and belief, and in order to finance the purchase of Defendant Belz, Defendant DiMeglio's and Defendant Dvorak's interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., obtained various loans from Dime Bank as successor by merger to BNB Bank (sometimes referred to as either "Dime" or "Bank"), including but not limited to:

1.   SBA Loan: (1) Note for the original principal balance of $4,650,000.00, dated December 18, 2020, executed by Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. Blue Station Realty, LLC and Al LaBella and Meghan LaBella (the "LaBellas") in favor of Bank; (2) Mortgage, dated December 18, 2020, executed by Blue Station Realty and

the LaBellas in favor of Bank; (3) Loan Agreement, dated December 18, 2020, executed by and among Bank, Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., Blue Station Realty and the LaBellas.

43.    The total amount in loans obtained from the Bank by Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and Blue Station Realty totaled $9,565,821.32.

44.    Upon information and belief, on or about June 24, 2021, Diam-N-Blu Mechanical Corp. merged into Blue Diamond Sheet Metal, Inc.

45.    Upon information and belief, on or about June 24, 2021, Mirage Mechanical Systems, Inc. merged into Blue Diamond Sheet Metal, Inc.

46.    Upon information and belief, on or about July 7, 2021, the Certificate of Incorporation of Blue Diamond Sheet Metal, Inc. was amended to change its name to the Debtor, Blue Diamond Air Systems, Inc.

47.    In essence, Blue Diamond Sheet Metal, Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. merged to form the Debtor, Blue Diamond Air Systems Inc.

48.    The Debtor assumed all of the assets and liabilities of Blue Diamond Sheet Metal, Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., including but not limited to the indebtedness owed to the Bank.

49.    As a consequence of financing the purchase of Defendant Belz', Defendant DiMeglio's and Defendant Dvorak's ownership and membership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. with Dime, the Debtor became indebted to Dime for a sum of not less than $9,565,821.32.

50.     Moreover, in order to secure the Debtor's obligation for this indebtedness, Dime obtained a blanket UCC-1 Article 9 security interest in and to all of the Debtor's assets.

51.     Obtaining the loan from Dime to assist in the financing of the LBO Transaction of Defendant Belz's, Defendant DiMeglio's and Defendant Dvorak's ownership and membership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. increased the Debtor's indebtedness to untenable levels.

52.     As a result of the LBO Transaction, Defendant Belz, Defendant DiMeglio and Defendant Dvorak obtained a windfall from the sale of their ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. in the sum of $1,482,750.00 each.

53.     The LBO Transaction eventually doomed the Debtor. Following the LBO Transaction and the additional $9,565,821.32 owed to Dime to finance the LBO Transaction, the Debtor was unable to operate profitably, and on October 4, 2022 (less than two years from the Closing Date of the LBO Transaction of December 22, 2020, the Debtor was compelled to file a Chapter 11 Petition.

54.     Upon information and belief, Defendant Belz is an "Insider" of the Debtor as that term is defined under 11 U.S.C. §101(31), in that he was a former shareholder and director of the entities Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., which eventually merged to become the Chapter 7 Debtor, Blue Diamond Air Systems, Inc.

55.     Upon information and belief, Defendant DiMeglio is an "Insider" of the Debtor as that term is defined under 11 U.S.C. §101(31), in that he was a former shareholder and director of the entities Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage

Mechanical Systems, Inc., which eventually merged to become the Chapter 7 Debtor, Blue Diamond Air Systems, Inc.

56.    Upon information and belief, Defendant Dvorak is an "Insider" of the Debtor as that term is defined under 11 U.S.C. §101(31), in that he was a former shareholder and director of the entities Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., which eventually merged to become the Chapter 7 Debtor, Blue Diamond Air Systems, Inc.

57.    Upon information and belief, the Debtor received no consideration in exchange for the funds given to the Defendant Belz in connection with the sale of his ownership interest in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.

58.    Upon information and belief, the Debtor received no consideration in exchange for the funds given to the Defendant DiMeglio in connection with the sale of his ownership interest in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.

59.    Upon information and belief, the Debtor received no consideration in exchange for the funds given to the Defendant Dvorak in connection with the sale of his ownership interest in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.

60.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the funds given to Defendant Belz in connection with the sale of his ownership interest in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.

61.     Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the funds given to the Defendant DiMeglio in connection with the sale of his ownership interest in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.

62.     Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the funds given to the Defendant Dvorak in connection with the sale of his ownership interest in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.

63.     The funds received by Defendant Belz in connection with the sale of his ownership interest in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. in the sum of $1,482,750.00 were made to or for the benefit of Defendant Belz.

64.     The funds received by the Defendant DiMeglio in connection with the sale of his ownership interest in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. in the sum of $1,482,750.00 were made to or for the benefit of Defendant DiMeglio.

65.     The funds received by the Defendant Dvorak in connection with the sale of his ownership interest in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. in the sum of $1,482,750.00 were made to or for the benefit of Defendant Dvorak.

66.     Upon information and belief, the Debtor was insolvent when it completed the LBO Transaction and transferred $1,482,750.00 to enable the LaBellas to purchase the Defendant Belz' ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical

Corp. and Mirage Mechanical Systems, Inc. or became insolvent as a result of the LBO Transaction.

67.    Upon information and belief, the Debtor was insolvent when it completed the LBO Transaction and transferred $1,482,750.00 to enable the LaBellas to purchase the Defendant DiMeglio's ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. or became insolvent as a result of the LBO Transaction.

68.    Upon information and belief, the Debtor was insolvent when it completed the LBO Transaction and transferred $1,482,750.00 to enable the LaBellas to purchase the Defendant Dvorak's ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. or became insolvent as a result of the LBO Transaction.

69.    Upon information and belief, there were present and existing creditors at the time of the LBO Transaction. In addition to priority unsecured claims owed to United States of America, Internal Revenue Service and New York State Department of Labor, there were general unsecured claims for unfunded liabilities owed to including but not limited to, the Sheet Metal National Workers' Pension Fund. All of these creditors were holding claims allowable under 11 U.S.C. § 502 who could have avoided the LBO Transaction and the $1,482,750.00 paid to Defendant Belz, the $1,482,750.00 paid to Defendant DiMeglio and the $1,482,750.00 paid to Defendant Dvorak.

70.    Upon information and belief, the LBO Transaction and the $1,482,750.00 paid to Defendant Belz, the $1,482,750.00 paid to Defendant DiMeglio and the $1,482,750.00 paid to Defendant Dvorak diminished the assets of the Debtor's bankruptcy estate.

71.    Upon information and belief, after completing the LBO Transaction and paying $1,482,750.00 to Defendant Belz, $1,482,750.00 to Defendant DiMeglio and $1,482,750.00 to Defendant Dvorak, the Debtor was left with unreasonably small capital, in that the Debtor was unable to generate sufficient profits to sustain operations, resulting in its Chapter 11 bankruptcy filing on October 4, 2022.

72.    The LBO Transaction, the increased debt load to finance the LBO Transaction from the loans obtained from Dime, and the payments made to Defendant Belz, Defendant DiMeglio and Defendant Dvorak left the Debtor so encumbered by debt that it was unable to propose let alone fund a confirmable plan of reorganization, resulting in its Chapter 11 Bankruptcy being converted to a Chapter 7 liquidation proceeding on February 10, 2023.

73.    In reviewing the United States Trustee's Motion to Convert the Debtor's Chapter 11 Case to Chapter 7 after barely more than four months in a Reorganization Proceeding, the United States Trustee reported that the Debtor's post-petition operations were so poor that the Debtor was unable to make its first pension benefit payment to the Sheet Metal Workers National Pension Fund in the amount of $169,085.88, its first insurance premium finance installment payment in the sum of $114,876.71, and its payroll taxes in the approximate amount of $200,000.00.

74.    Total claims against this Bankruptcy Estate, including the debt incurred to Dime to finance the LBO Transaction, total $46,493,054.81.

75.    Consequently, the Trustee may avoid the LBO Transaction and recover for the benefit of the estate $1,482,750.00 paid to Defendant Belz, the $1,482,750.00 paid to Defendant DiMeglio and the $1,482,750.00 paid to Defendant Dvorak pursuant to 11 U.S.C. § 550, the NY UVTA and other applicable law.

76.    In addition to a sale of their ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., Defendant Belz, Defendant DiMeglio and Defendant Dvorak had entered into "Consulting Agreements" with Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. wherein they would be paid a consulting fee of $3,683.33 per month over a period of 42 months (the "Consulting Fee"), commencing effective as of the Closing Date of December 22, 2020.

77.    Based upon these Consulting Agreements, Defendant Belz, Defendant DiMeglio and Defendant Dvorak would have each received Consulting Fees in the sum of $154,699.86 each ($3,683.33 x 42) had they received all of their Consulting Fee payments.

78.    Upon information and belief, the Debtor received no consideration in exchange for any Consulting Fees paid to the Defendant Belz in connection with the Consulting Agreement.

79.    Upon information and belief, the Debtor received no consideration in exchange for any Consulting Fees paid to the Defendant DiMeglio in connection with the Consulting Agreement.

80.    Upon information and belief, the Debtor received no consideration in exchange for any Consulting Fees paid to the Defendant Dvorak in connection with the Consulting Agreement.

81.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for any Consulting Fees paid to the Defendant Belz in connection with the Consulting Agreement.

82.    Upon information and belief, the Debtor received less than reasonably

equivalent value in exchange for any Consulting Fees paid to the Defendant DiMeglio in connection with the Consulting Agreement.

83.     Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for any Consulting Fees paid to the Defendant Dvorak in connection with the Consulting Agreement.

84.     Any Consulting Fees the Defendant Belz received in connection with the Consulting Agreement were made to or for the benefit of the Defendant Belz.

85.     Any Consulting Fees the Defendant DiMeglio received in connection with the Consulting Agreement were made to or for the benefit of the Defendant DiMeglio.

86.     Any Consulting Fees the Defendant Dvorak received in connection the Consulting Agreement were made to or for the benefit of the Defendant Dvorak.

87.     Upon information and belief, the Debtor was insolvent when it paid any Consulting Fees to the Defendant Belz in connection with the Consulting Agreement or became insolvent as a result of the payment of these Consulting Fees.

88.     Upon information and belief, the Debtor was insolvent when it paid any Consulting Fees to the Defendant DiMeglio in connection with the Consulting Agreement or became insolvent as a result of the payment of these Consulting Fees.

89.     Upon information and belief, the Debtor was insolvent when it paid any Consulting Fees to the Defendant Dvorak in connection with the Consulting Agreement or became insolvent as a result of the payment of these Consulting Fees.

90.     Upon information and belief, there were present and existing creditors at the time the Consulting Fees were paid to Defendant Belz, Defendant DiMeglio and Defendant Dvorak. In addition to priority unsecured claims owed to United States of America, Internal

Revenue Service and New York State Department of Labor, there were general unsecured claims for unfunded liabilities owed to including but not limited to Sheet Metal National Workers' Pension Fund. All of these creditors were holding claims allowable under 11 U.S.C. § 502 who could have avoided the payment of the Consulting Fees paid to Defendant Belz, paid to Defendant DiMeglio and paid to Defendant Dvorak.

91.     Upon information and belief, the Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Dvorak diminished the assets of the Debtor's bankruptcy estate.

92.     Upon information and belief, after the Consulting Fees were paid to Defendant Belz, paid to Defendant DiMeglio and paid to Defendant Dvorak, the Debtor was left with unreasonably small capital, in that the Debtor was unable to generate sufficient profits to sustain operations, resulting in its Chapter 11 bankruptcy filing on October 4, 2022.

93.     Consequently, the Trustee may avoid and recover for the benefit of the Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Dvorak pursuant to 11 U.S.C. § 550, the NY UVTA and other applicable law.

### AS AND FOR THE FIRST CAUSE OF ACTION
### TO AVOID AND RECOVER FRAUDULENT TRANSFERS PURSUANT
### TO §§ 548(a)(1)(A), 550 AND 551 OF THE BANKRUPTCY CODE
(The LBO Transaction)

94.     The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "93" of this Complaint as if they were fully set forth herein.

95.     Pursuant to §§ 548 (a)(1)(A) and 550 of the Bankruptcy Code, the Trustee may avoid and recover any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two (2) years of the Petition Date,

if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

96. As described herein, $1,482,750.00 was paid to Defendant Belz on or about December 22, 2020 for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., during the two (2) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial but in no event shall not be less than $1,482,750.00.

97. As described herein, $1,482,750.00 was paid to Defendant DiMeglio on or about December 22, 2020 for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., during the two (2) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial but in no event shall not be less than $1,482,750.00.

98. As described herein, $1,482,750.00 was paid to Defendant Dvorak on or about December 22, 2020 for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., during the two (2) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial but in no event shall not be less than $1,482,750.00.

99. Upon information and belief, the LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

100. Upon information and belief, the LBO Transaction and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

101. Upon information and belief, the LBO Transaction and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

102. As a result, the Trustee may avoid the LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. pursuant to § 548(a)(1)(A) of the Bankruptcy Code.

103. As a result, the Trustee may avoid the LBO Transaction and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. pursuant to § 548(a)(1)(A) of the Bankruptcy Code.

104. As a result, the Trustee may avoid the LBO Transaction and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. pursuant to § 548(a)(1)(A) of the Bankruptcy Code.

105. Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

106.    Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 548(a)(1)(A) of the Bankruptcy Code, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

107.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

108.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

109.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

AS AND FOR A SECOND CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 548(a)(1)(B), 550 AND 551 OF THE BANKRUPTCY CODE
(THE LBO TRANSACTION)

110.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "109" of this Complaint as if they were fully set forth herein.

111.    Pursuant to §§ 548(a)(1)(B) and 550 of the Bankruptcy Code, the Trustee may avoid and recover any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two (2) years of the Petition Date, if the debtor voluntarily or involuntarily:

(i)    received less than reasonably equivalent value in exchange for such transfer or obligation; and

(ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of any insider, under an employment contract and not in the ordinary course of business.

112.    As described herein, the LBO Transaction and $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu

19

Mechanical Corp. and Mirage Mechanical Systems, Inc. were transferred to and for Defendant Belz

personal benefit during the two (2) year period immediately prior to the Petition Date. The total

amount of the transfers shall be established by evidence proffered at trial, but in no event shall not be

less than $1,482,750.00.

113.    As described herein, the LBO Transaction and $1,482,750.00 paid to

Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu

Mechanical Corp. and Mirage Mechanical Systems, Inc. were transferred to and for Defendant

DiMeglio's personal benefit during the two (2) year period immediately prior to the Petition Date.

The total amount of the transfers shall be established by evidence proffered at trial, but in no event

shall not be less than $1,482,750.00.

114.    As described herein, the LBO Transaction and $1,482,750.00 paid to

Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu

Mechanical Corp. and Mirage Mechanical Systems, Inc. were transferred to and for Defendant

Dvorak's personal benefit during the two (2) year period immediately prior to the Petition Date. The

total amount of the transfers shall be established by evidence proffered at trial, but in no event shall

not be less than $1,482,750.00.

115.    Upon information and belief, the Debtor received less than reasonably

equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant

Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp.

and Mirage Mechanical Systems, Inc. and was insolvent on the date that such transfers were made,

or became insolvent as a result of such transfers.

116.    Upon information and belief, the Debtor received less than reasonably

equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant

Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which property remaining with the Debtor was an unreasonably small capital.

117.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

118.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and made such transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider.

119.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and was insolvent on the date that such transfers were made, or became insolvent as a result of such transfers.

120.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the Debtor was engaged in business or a

transaction, or was about to engage in business or a transaction, for which property remaining with the Debtor was an unreasonably small capital.

121.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

122.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and made such transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider.

123.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and was insolvent on the date that such transfers were made, or became insolvent as a result of such transfers.

124.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which property remaining with the Debtor was an unreasonably small capital.

125. Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

126. Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and made such transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider.

127. As a result of the above, the Trustee may avoid the LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.; the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. pursuant to § 548(a)(1)(B) of the Bankruptcy Code.

128. Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

129. Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 548(a)(1)(B) of the Bankruptcy Code, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property,

from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

130.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

131.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

132.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

AS AND FOR A THIRD CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 544, 550, 551 OF THE BANKRUPTCY CODE
AND NEW YORK UNIFORM VOIDABLE TRANSACTIONS ACT SECTION 273(a)(1)
(The LBO Transaction)

133.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "132" of this Complaint as if they were fully set forth herein.

134.    Pursuant to § 544 of the Bankruptcy Code and § 273(a)(1) of the New York UVTA, the Trustee may avoid and recover any transfer made or obligation incurred by a debtor as to a creditor within four (4) years of the Petition Date, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.

135.    As described herein, the LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. occurred on or about December 22, 2020, during the four (4) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial but in no event shall not be less than $1,482,750.00.

136.    As described herein, the LBO Transaction and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. occurred on or about December 22, 2020, during the four (4) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial but in no event shall not be less than $1,482,750.00.

137.    As described herein, the LBO Transaction and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. occurred on or about December 22, 2020, during the four (4) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial but in no event shall not be less than $1,482,750.00.

138.    Upon information and belief, the LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. were made with the actual intent to hinder, delay or defraud the Debtor's creditors or any one of them.

139.    Upon information and belief, the LBO Transaction and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. were made with the actual intent to hinder, delay or defraud the Debtor's creditors or any one of them.

140.    Upon information and belief, the LBO Transaction and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. were made with the actual intent to hinder, delay or defraud the Debtor's creditors or any one of them.

141.    As a result of the above, the Trustee may avoid the LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., the $1,482,750.00 paid to Defendant  DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. pursuant to § 544 of the Bankruptcy Code and § 273(a)(1) of the New York UVTA.

142.    Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

143.    Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 544 of the Bankruptcy Code and § 273(a)(1) of the New York UVTA, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

144.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

145.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

146.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

AS AND FOR A FOURTH CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE
AND NEW YORK UNIFORM VOIDABLE TRANSACTIONS ACT SECTION 273(a)(2)
(The LBO Transaction)

147.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "146" of this Complaint as if they were fully set forth herein.

148.    Pursuant to § 544 of the Bankruptcy Code and § 273(a)(2) of the New York UVTA, the Trustee may avoid and recover any transfer made or obligation incurred by a debtor as to a creditor within four (4) years of the Petition Date, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii)    intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

149.    As described herein, the LBO Transaction and funds belonging to the Debtor were transferred to the Defendant Belz, for his personal benefit during the four (4) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial, but in no event are not less than $1,482,750.00.

150.    Upon information and belief, the Debtor made the LBO Transaction and the transfer of $1,482,750.00 to Defendant Belz without receiving a reasonably equivalent value in

exchange for the transfer or obligation and the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

151.    Upon information and belief, the Debtor made the LBO Transaction and transfer of $1,482,750.00 to Defendant Belz without receiving reasonably equivalent value in exchange for the transfer or obligation and the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

152.    Upon information and belief, the Debtor made the LBO Transaction and the transfer of $1,482,750.00 to Defendant DiMeglio without receiving a reasonably equivalent value in exchange for the transfer or obligation and the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

153.    Upon information and belief, the Debtor made the LBO Transaction and the transfer of $1,482,750.00 to Defendant DiMeglio without receiving reasonably equivalent value in exchange for the transfer or obligation and the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

154.    Upon information and belief, the Debtor made the LBO Transaction and the transfer of $1,482,750.00 to Defendant Dvorak without receiving a reasonably equivalent value in exchange for the transfer or obligation and the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

155.    Upon information and belief, the Debtor made the LBO Transaction and the transfer of $1,482,750.00 to Defendant Dvorak without receiving reasonably equivalent value in exchange for the transfer or obligation and the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

156.    As a result of the above, the Trustee may avoid the LBO Transaction and the transfer of $1,482,750.00 paid to Defendant Belz, the $1,482,750.00 paid to Defendant DiMeglio and the $1,482,750.00 paid to Defendant Dvorak pursuant to § 544 of the Bankruptcy Code and § 273(a)(2) of the New York UVTA.

157.    Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

158.    Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 544 of the Bankruptcy Code and § 273(a)(2) of the New York UVTA, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

159.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

160.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

161.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

### AS AND FOR A FIFTH CAUSE OF ACTION
### TO AVOID AND RECOVER FRAUDULENT TRANSFERS
### PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE
### AND NEW YORK UNIFORM VOIDABLE TRANSACTIONS ACT SECTION 274(a)
### (The LBO Transaction)

162.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "161" of this Complaint as if they were fully set forth herein.

163.    Pursuant to § 544 of the Bankruptcy Code and § 274(a) of the New York UVTA, transfers made or obligations incurred by a debtor  are voidable as to a creditor whose claim arose before such transfer was made or obligation incurred, if the debtor made the transfer or incurred the obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation. The Trustee may avoid and recover any such transfer made or obligation incurred by a debtor within the four (4) year period immediately prior to the Petition Date.

164.    As described herein, the LBO Transaction occurred and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. during the four (4) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial, but in no event are not less than $1,482,750.00.

165.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the Debtor was insolvent at that time or the Debtor became insolvent as a result of these transfers.

166.    As described herein, the LBO Transaction occurred and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. during the four (4) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial, but in no event are not less than $1,482,750.00.

167.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the Debtor was insolvent at that time or the Debtor became insolvent as a result of these transfers.

168.    As described herein, the LBO Transaction occurred and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. during the four (4) year period

immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial, but in no event are not less than $1,482,750.00.

169.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the LBO Transaction and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the Debtor was insolvent at that time or the Debtor became insolvent as a result of these transfers.

170.    As a result of the above, the Trustee may avoid the LBO Transaction and the transfer of $1,482,750.00 paid to Defendant Belz, the $1,482,750.00 paid to Defendant DiMeglio and the $1,482,750.00 paid to Defendant Dvorak pursuant to § 544 of the Bankruptcy Code and § 274(a) of the New York UVTA.

171.    Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

172.    Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 544 of the Bankruptcy Code and § 274(a) of the New York UVTA, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

173.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the

Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

174.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

175.    As described above, the Trustee may avoid the LBO Transaction and recover the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

### AS AND FOR A SIXTH CAUSE OF ACTION
### TO AVOID AND RECOVER FRAUDULENT TRANSFERS
### PURSUANT TO SECTIONS 548(a)(1)(A), 550 AND 551 OF THE BANKRUPTCY CODE
### (Consulting Fees)

176.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "175" of this Complaint as if they were fully set forth herein.

177.    Pursuant to §§ 548 (a)(1)(A) and 550 of the Bankruptcy Code, the Trustee may avoid and recover any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two (2) years of the Petition Date, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

178.    As described herein, the Consulting Fees that were to be paid to Defendant Belz occurred after the closing held on or about December 22, 2020, during the two (2) year period immediately prior to the Petition Date. The total amount of the Consulting Fees shall be established by evidence proffered at trial.

179.    As described herein, the Consulting Fees that were to be paid to Defendant DiMeglio occurred after the closing held on or about December 22, 2020, during the two (2) year period immediately prior to the Petition Date. The total amount of the Consulting Fees shall be established by evidence proffered at trial.

180.    As described herein, the Consulting Fees that were to be paid to Defendant Dvorak occurred after the closing held on or about December 22, 2020, during the two (2) year period immediately prior to the Petition Date. The total amount of the Consulting Fees shall be established by evidence proffered at trial.

181.    Upon information and belief, the Consulting Fees paid to Defendant Belz were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

182.    Upon information and belief, the Consulting Fees paid to Defendant DiMeglio were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

183.    Upon information and belief, the Consulting Fees paid to Defendant Dvorak were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

184.    As a result of the above, the Trustee may avoid the Consulting Fees paid to Defendant Belz pursuant to § 548(a)(1)(A) of the Bankruptcy Code.

185.    As a result of the above, the Trustee may avoid the Consulting Fees paid to Defendant DiMeglio pursuant to § 548(a)(1)(A) of the Bankruptcy Code.

186.    As a result of the above, the Trustee may avoid the Consulting Fees paid to Defendant Dvorak pursuant to § 548(a)(1)(A) of the Bankruptcy Code.

187.    Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

188.    Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 548(a)(1)(A) of the Bankruptcy Code, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

189.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

190.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

191.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

AS AND FOR A SEVENTH CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 548(a)(1)(B), 550 AND 551 OF THE BANKRUPTCY CODE
(Consulting Fees)

192.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "191" of this Complaint as if they were fully set forth herein.

193.    Pursuant to §§ 548(a)(1)(B) and 550 of the Bankruptcy Code, the Trustee may avoid and recover any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two (2) years of the Petition Date, if the debtor voluntarily or involuntarily:

(iii)    received less than reasonably equivalent value in exchange for such transfer or obligation; and

(iv)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of any insider, under an employment contract and not in the ordinary course of business.

194.    As described herein, the Consulting Fees paid to Defendant Belz were transferred to and for Defendant Belz personal benefit during the two (2) year period immediately

prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial.

195.    As described herein, the Consulting Fees paid to Defendant DiMeglio were transferred to and for Defendant DiMeglio's personal benefit during the two (2) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial.

196.    As described herein, the Consulting Fees paid to Defendant Dvorak were transferred to and for Defendant Dvorak's personal benefit during the two (2) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial

197.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant Belz and was insolvent on the date that such Consulting Fees were paid, or became insolvent as a result of such transfers.

198.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant Belz and the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which property remaining with the Debtor was an unreasonably small capital.

199.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant Belz and the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

200.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant Belz and made such

transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider.

201.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant DiMeglio and was insolvent on the date that such Consulting Fees were paid, or became insolvent as a result of such transfers

202.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant DiMeglio and the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which property remaining with the Debtor was an unreasonably small capital.

203.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant DiMeglio and the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

204.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant DiMeglio and made such transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider.

205.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant Dvorak and was insolvent on the date that such transfers were made, or became insolvent as a result of such transfers.

206.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant Dvorak and the Debtor

was engaged in business or a transaction, or was about to engage in business or a transaction, for which property remaining with the Debtor was an unreasonably small capital.

207.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant Dvorak and the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

208.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange Consulting Fees paid to Defendant Dvorak and made such transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider.

209.    As a result of the above, the Trustee may avoid the Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Dvorak pursuant to § 548(a)(1)(B) of the Bankruptcy Code.

210.    Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

211.    Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 548(a)(1)(B) of the Bankruptcy Code, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

212.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Belz from the Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

40

213.     As described above, the Trustee may avoid the Consulting Fees paid to Defendant DiMeglio from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

214.     As described above, the Trustee may avoid the Consulting Fees paid to Defendant Dvorak from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

AS AND FOR AN EIGHTH CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 544, 550, 551 OF THE BANKRUPTCY CODE
AND NEW YORK UNIFORM VOIDABLE TRANSACTIONS ACT SECTION 273(a)(1)
(Consulting Fees)

215.     The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "214" of this Complaint as if they were fully set forth herein.

216.     Pursuant to § 544 of the Bankruptcy Code and § 273(a)(1) of the New York UVTA, the Trustee may avoid and recover any transfer made or obligation incurred by a debtor as to a creditor within four (4) years of the Petition Date, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.

217.     As described herein, the Consulting Fees paid to Defendant Belz occurred after the closing on or about December 22, 2020, during the four (4) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial.

218.    As described herein, the Consulting Fees paid to Defendant DiMeglio occurred after the closing on or about December 22, 2020, during the four (4) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial.

219.    As described herein, the Consulting Fees paid to Defendant Dvorak for his occurred after the closing on or about December 22, 2020, during the four (4) year period immediately prior to the Petition Date. The total amount of the transfers shall be established by evidence proffered at trial.

220.    Upon information and belief, the Consulting Fees paid to Defendant Belz were made with the actual intent to hinder, delay or defraud the Debtor's creditors or any one of them.

221.    Upon information and belief, the Consulting Fees paid to Defendant DiMeglio were made with the actual intent to hinder, delay or defraud the Debtor's creditors or any one of them.

222.    Upon information and belief, the Consulting Fees paid to Defendant Dvorak were made with the actual intent to hinder, delay or defraud the Debtor's creditors or any one of them.

223.    As a result of the above, the Trustee may avoid the Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Dvorak pursuant to § 544 of the Bankruptcy Code and § 273(a)(1) of the New York UVTA.

224.    Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

225.    Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 544 of the Bankruptcy Code and § 273(a)(1) of the New York UVTA,

the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

226.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Belz from the Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

227.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant DiMeglio from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

228.    As described above, the Trustee may avoid the Consulting Fees paid to paid to Defendant Dvorak from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

AS AND FOR A NINTH CAUSE OF ACTION<br>
TO AVOID AND RECOVER FRAUDULENT TRANSFERS<br>
PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE<br>
AND NEW YORK UNIFORM VOIDABLE TRANSACTIONS ACT SECTION 273(a)(2)<br>
(Consulting Fees)

229.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "228" of this Complaint as if they were fully set forth herein.

230.    Pursuant to § 544 of the Bankruptcy Code and § 273(a)(2) of the New York UVTA, the Trustee may avoid and recover any transfer made or obligation incurred by a debtor as

43

to a creditor within four (4) years of the Petition Date, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

      (iii)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

      (iv)    intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

231.    As described herein, the Consulting Fees paid to Defendant Belz were funds belonging to the Debtor and were transferred to the Defendant Belz for his personal benefit during the four (4) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial.

232.    Upon information and belief, the Debtor paid the Consulting Fees to Defendant Belz without receiving a reasonably equivalent value in exchange for the transfer or obligation and the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

233.    Upon information and belief, the Debtor paid the Consulting Fees to Defendant Belz without receiving reasonably equivalent value in exchange for the transfer or obligation and the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

234.    Upon information and belief, the Debtor paid the Consulting Fees to Defendant DiMeglio without receiving a reasonably equivalent value in exchange for the transfer or obligation and the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

235.    Upon information and belief, the Debtor paid the Consulting Fees to Defendant DiMeglio without receiving reasonably equivalent value in exchange for the transfer or obligation and the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

236.    Upon information and belief, the Debtor paid the Consulting Fees to Defendant Dvorak without receiving a reasonably equivalent value in exchange for the transfer or obligation and the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

237.    Upon information and belief, the Debtor paid the Consulting Fees to Defendant Dvorak without receiving reasonably equivalent value in exchange for the transfer or obligation and the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

238.    As a result of the above, the Trustee may avoid the Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Dvorak pursuant to § 544 of the Bankruptcy Code and § 273(a)(2) of the New York UVTA.

45

239.    Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

240.    Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 544 of the Bankruptcy Code and § 273(a)(2) of the New York UVTA, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

241.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Belz from the Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

242.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant DiMeglio from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

243.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Dvorak from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

## AS AND FOR A TENTH CAUSE OF ACTION
## TO AVOID AND RECOVER FRAUDULENT TRANSFERS
## PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE
## AND NEW YORK UNIFORM VOIDABLE TRANSACTIONS ACT SECTION 274(a)
### (Consulting Fees)

244.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "243" of this Complaint as if they were fully set forth herein.

245.    Pursuant to § 544 of the Bankruptcy Code and § 274(a) of the New York UVTA, transfers made or obligations incurred by a debtor  are voidable as to a creditor whose claim arose before such transfer was made or obligation incurred, if the debtor made the transfer or incurred the obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation. The Trustee may avoid and recover any such transfer made or obligation incurred by a debtor within the four (4) year period immediately prior to the Petition Date.

246.    As described herein, the Consulting Fees were paid to Defendant Belz during the four (4) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial.

247.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant Belz and the Debtor was insolvent at that time or the Debtor became insolvent as a result of these transfers.

248.    As described herein, the Consulting Fees were paid to Defendant DiMeglio during the four (4) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial.

249.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant DiMeglio and the Debtor was insolvent at that time or the Debtor became insolvent as a result of these transfers.

250.    As described herein, the Consulting Fees were paid to Defendant Dvorak during the four (4) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial.

251.    Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the Consulting Fees paid to Defendant Dvorak and the Debtor was insolvent at that time or the Debtor became insolvent as a result of these transfers.

252.    As a result of the above, the Trustee may avoid the Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Dvorak pursuant to § 544 of the Bankruptcy Code and § 274(a) of the New York UVTA.

253.    Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

254.    Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 544 of the Bankruptcy Code and § 274(a) of the New York UVTA, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

255.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Belz from the Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

256.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant DiMeglio from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

257.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Dvorak from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

AS AND FOR AN ELEVENTH CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE
<u>AND NEW YORK UNIFORM VOIDABLE TRANSACTIONS ACT SECTION 274(b)</u>
(Consulting Fees)

258.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "257" as if they were fully set forth herein.

259.    Pursuant to § 544 of the Bankruptcy Code and § 274(b) of the New York UVTA, transfers made or obligations incurred by a Debtor are voidable as to a creditor whose claim arose before such transfer was made or obligation incurred, if the transfer was made or obligation incurred by a debtor to an insider for an antecedent debt, the Debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. The Trustee may avoid and recover any such transfer made or obligation incurred by a debtor within one (1) year of the Petition Date.

260.    Upon information and belief, and within one (1) year of the Petition Date, any and all Consulting Fees paid to Defendant Belz were paid to him for his benefit as an insider, for an antecedent debt in an amount to be determined at trial.

261.    The Debtor was insolvent at the time of that these Consulting Fees were paid to Defendant Belz or became insolvent as a result of the fraudulent transfers.

262.    Upon information and belief, Defendant Belz knew and/or had reasonable cause to believe that the Debtor was insolvent at the time the Consulting Fees were paid to him.

263.    Upon information and belief, and within one (1) year of the Petition Date, any and all Consulting Fees paid to Defendant DiMeglio were paid to him for his benefit as an insider, for an antecedent debt in an amount to be determined at trial.

264.    The Debtor was insolvent at the time of that these Consulting Fees were paid to Defendant DiMeglio or became insolvent as a result of the fraudulent transfers.

265.    Upon information and belief, Defendant DiMeglio knew and/or had reasonable cause to believe that the Debtor was insolvent at the time the Consulting Fees were paid to him.

266.    Upon information and belief, and within one (1) year of the Petition Date, any and all Consulting Fees paid to Defendant Dvorak were paid to him for his benefit as an insider, for an antecedent debt in an amount to be determined at trial.

267.    The Debtor was insolvent at the time of that these Consulting Fees were paid to Defendant Dvorak or became insolvent as a result of the fraudulent transfers.

268.    Upon information and belief, Defendant Dvorak knew and/or had reasonable cause to believe that the Debtor was insolvent at the time the Consulting Fees were paid to him.

269.    As a result of the above, the Trustee may avoid the Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Belz pursuant to § 544 of the Bankruptcy Code and § 274(b) of the New York UVTA.

270.    Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

271.    Pursuant to § 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under § 544 of the Bankruptcy Code and § 274(b) of the New York UVTA, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property,  from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

272.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Belz from the Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

273.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant DiMeglio from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

274.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Dvorak from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

## AS AND FOR A TWELFTH CAUSE OF ACTION
## TO AVOID AND RECOVER PREFERNTIAL TRANSFERS
## PURSUANT TO SECTIONS 547(b), 550 AND 551 OF THE BANKRUPTCY CODE
### (Consulting Fees)

275.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "274" as if they were fully set forth herein.

276.    According to the Consulting Agreement, Defendant Belz would be paid a consulting fee of $3,683.33 per month over a period of 42 months (the "Consulting Fee"), commencing effective as of the Closing Date of December 22, 2020.

277.    Had he received all of his payments, the total amount that Defendant Belz would have been entitled to be paid for Consulting Fees under the Consulting Agreement would have been $154,699.86.

278.    According to the Rider to his Proof of Claim executed under the penalty of perjury filed with the Bankruptcy Court on June 14, 2023 (Claim # 60), Defendant Belz asserted that he was still owed 22 payments under the Consulting Agreement in the sum of $81,033.26.

279.    Based upon his Proof of Claim, Defendant Belz was paid $73,666.60 in Consulting Fees prior to the Petition Date.

280.    Upon information and belief, some or all of the Consulting Fees Paid to Defendant Belz occurred within one year of the Petition Date (the "Preference Period").

281.    Upon information and belief, the Debtor was insolvent at all times that Defendant Belz received Consulting Fees during the Preference Period.

282.    Upon information and belief, the Consulting Fees paid to Defendant Belz diminished the assets of the Debtor's Bankruptcy Estate.

283.    Upon information and belief, the Consulting Fees paid to Defendant Belz were made to or for the benefit of Defendant Belz, who was a creditor of the Debtor.

284.    Upon information and belief, the Consulting Fees paid to Defendant Belz were for, or on account of, antecedent debts owed by the Debtor to Defendant Belz before such transfers were made.

285.    Upon information and belief, the Consulting Fees paid to Defendant Belz were made while the Debtor was insolvent.

286.    Upon information and belief, the Consulting Fees paid to Defendant Belz enabled Defendant Belz to receive more than he would have received under Chapter 7 of the Bankruptcy Code had these Preferential Transfers not been made.

287.    According to the Consulting Agreement, Defendant DiMeglio would be paid a consulting fee of $3,683.33 per month over a period of 42 months (the "Consulting Fee"), commencing effective as of the Closing Date of December 22, 2020.

288.    Had he received all of his payments, the total amount that Defendant DiMeglio would have been entitled to be paid for Consulting Fees under the Consulting Agreement would have been $154,699.86.

289.    According to the Rider to his Proof of Claim executed under the penalty of perjury and filed with the Bankruptcy Court on June 15, 2023 (Claim # 61), Defendant DiMeglio asserted that he was still owed 22 payments under the Consulting Agreement in the sum of $81,033.26.

290.    Based upon his Proof of Claim, the Defendant DiMeglio was paid $73,666.60in Consulting Fees prior to the Petition Date.

291.    Upon information and belief, some or all of the Consulting Fees paid to Defendant DiMeglio occurred during the Preference Period.

292.    Upon information and belief, the Debtor was insolvent at all times that Defendant DiMeglio received Consulting Fees during the Preference Period.

293.    Upon information and belief, the Consulting Fees paid to Defendant DiMeglio diminished the assets of the Debtor's Bankruptcy Estate.

294.    Upon information and belief, the Consulting Fees paid to Defendant DiMeglio were made to or for the benefit of Defendant DiMeglio, who was a creditor of the Debtor.

295.    Upon information and belief, the Consulting Fees paid to Defendant DiMeglio were for, or on account of, antecedent debts owed by the Debtor to Defendant DiMeglio before such transfers were made.

296.    Upon information and belief, the Consulting Fees paid to Defendant DiMeglio were made while the Debtor was insolvent.

297.    Upon information and belief, the Consulting Fees paid to Defendant DiMeglio enabled Defendant DiMeglio to receive more than he would have received under Chapter 7 of the Bankruptcy Code had these Preferential Transfers not been made.

298.    According to the Consulting Agreement, Defendant Dvorak would be paid a consulting fee of $3,683.33 per month for a period of 42 months (the "Consulting Fee"), commencing effective as of the Closing Date of December 22, 2020.

299.    Had he received all of his payments, the total amount that Defendant Dvorak would have been entitled to be paid for Consulting Fees under the Consulting Agreement would have been $154,699.86.

300.    According to the Rider to his Proof of Claim executed under the penalty of perjury filed with the Bankruptcy Court on June 14, 2023 (Claim # 59), Defendant Dvorak asserted that he was still owed 22 payments under the Consulting Agreement in the sum of $81,033.26.

301.    Based upon his Proof of Claim, Defendant Dvorak was paid $73,666.60 in Consulting Fees prior to the Petition Date.

302.    Upon information and belief, some or all of the Consulting Fees paid to Defendant Dvorak occurred during the Preference Period.

303.    Upon information and belief, the Debtor was insolvent at all times that Defendant Dvorak received Consulting Fees during the Preference Period.

304.    Upon information and belief, the Consulting Fees paid to Defendant Dvorak diminished the assets of the Debtor's Bankruptcy Estate.

305.    Upon information and belief, the Consulting Fees paid to Defendant Dvorak were made to or for the benefit of Defendant DiMeglio, who was a creditor of the Debtor.

306.    Upon information and belief, the Consulting Fees paid to Defendant Dvorak were for, or on account of, antecedent debts owed by the Debtor to Defendant Dvorak before such transfers were made.

307.    Upon information and belief, the Consulting Fees paid to Defendant Dvorak were made while the Debtor was insolvent.

308.    Upon information and belief, the Consulting Fees paid to Defendant Dvorak enabled Defendant Dvorak to receive more than he would have received under Chapter 7 of the Bankruptcy Code had these Preferential Transfers not been made.

309.    Based upon his reasonable due diligence in the circumstances of the case and taking into account the Defendant Belz known or reasonably knowable affirmative defenses

under 11 U.S.C. § 547(c), the Trustee concluded that he had grounds to recover the Consulting Fees paid to Defendant Belz during the Preference Period as Preferential Transfers from Defendant Belz pursuant to 11 U.S.C. § 547(b).

310. Based upon his reasonable due diligence in the circumstances of the case and taking into account the Defendant DiMeglio's known or reasonably knowable affirmative defenses under 11 U.S.C. § 547(c), the Trustee concluded that he had grounds to recover the Consulting Fees paid to Defendant DiMeglio during the Preference Period as Preferential Transfers from Defendant Belz pursuant to 11 U.S.C. § 547(b).

311. Based upon his reasonable due diligence in the circumstances of the case and taking into account the Defendant Dvorak's known or reasonably knowable affirmative defenses under 11 U.S.C. § 547(c), the Trustee concluded that he had grounds to recover the Consulting Fees paid to Defendant Dvorak during the Preference Period as Preferential Transfers from Defendant Belz pursuant to 11 U.S.C. § 547(b).

312. As a result of the above, the Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Belz during the Preference Period may be avoided by the Trustee as Preferential Transfers pursuant to Section 547(b) of the Bankruptcy Code.

313. Pursuant to § 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

314. Pursuant to § 550 of the Bankruptcy Code, in a preference action commenced under § 547(b) of the Bankruptcy Code, the Trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii)

any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

315.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Belz as Preferential Transfers from the Defendant Belz who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

316.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant DiMeglio as Preferential Transfers from the Defendant DiMeglio who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

317.    As described above, the Trustee may avoid the Consulting Fees paid to Defendant Dvorak as Preferential Transfers from the Defendant Dvorak who, upon information and belief, is an initial transferee, a party that benefited from the initial transfers, an immediate transferee and/or mediate transferee.

AS AND FOR A THIRTEENTH CAUSE OF ACTION
DISALLOWANCE OF CLAIM 11 U.S.C. SECTION 502(d)

318.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "317" of this Complaint as if they were fully set forth herein.

319.    Pursuant to 11 U.S.C. § 502(d), the Court shall disallow any claim of any entity to the extent property is recoverable under §§ 542, 543, 550 or 553 of the Bankruptcy Code, or that a transferee of a transfer avoidable under §§ 522(f), 522(h), 544, 547, 548, 549 or 724(a) of the Bankruptcy Code, unless such entity shall have paid the amounts recoverable or turned over such property sought.

320.    Until such time as Defendant Belz returns and/or pays the Transfers in the sum of not less than $1,482,750.00 to the Trustee, Defendant Belz's claims, whether now or subsequently scheduled, filed or otherwise asserted against the Estate, should be disallowed in their entirety.

321.    Until such time as Defendant Belz returns and/or pays the Consulting Fees that he received during the Preference Period to the Trustee, Defendant Belz's claims, whether now or subsequently scheduled, filed or otherwise asserted against the Estate, should be disallowed in their entirety.

322.    Until such time as Defendant DiMeglio returns and/or pays the Transfers in the sum of not less than $1,482,750.00 to the Trustee, Defendant DiMeglio's claims, whether now or subsequently scheduled, filed or otherwise asserted against the Estate, should be disallowed in their entirety.

323.    Until such time as Defendant DiMeglio returns and/or pays the Consulting Fees that he received during the Preference Period to the Trustee, Defendant DiMeglio's claims, whether now or subsequently scheduled, filed or otherwise asserted against the Estate, should be disallowed in their entirety.

324.    Until such time as Defendant Dvorak returns and/or pays the Transfers in the sum of not less than $1,482,750.00 to the Trustee, Defendant Dvorak's, whether now or subsequently scheduled, filed or otherwise asserted against the Estate, should be disallowed in their entirety.

325.    Until such time as Defendant Dvorak returns and/or pays the Consulting Fees that he received during the Preference Period to the Trustee, Defendant Dvorak's claims,

whether now or subsequently scheduled, filed or otherwise asserted against the Estate, should be disallowed in their entirety.

AS AND FOR A FOURTEENTH CAUSE OF ACTION<br>
FOR TURNOVER OF PROPERTY OF THE ESTATE<br>
AND DEMAND FOR AN ACOUNTING<br>
PURSUANT TO SECTION 542 OF THE BANKRUPTCY CODE

326.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "325" of this Complaint as if they were fully set forth herein.

327.    The $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.; the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. came from property that belonged to the Debtor.

328.    Prior to the Petition Date, the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.; the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. were the Debtor's property.

329.    The $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.; the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond

Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. remain, in the post-petition period, transfers of the Debtor's property.

330.    The Trustee continues in his demand that Defendant Belz turnover to the Trustee $1,482,750.00 that he received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to the Trustee.

331.    Defendant Belz has not returned the $1,482,750.00 that he received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to the Trustee.

332.    The Trustee continues in his demand that Defendant DiMeglio turnover to the Trustee $1,482,750.00 that he received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to the Trustee.

333.    Defendant DiMeglio has not returned the $1,482,750.00 that he received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to the Trustee.

334.    The Trustee continues in his demand that Defendant Dvorak turnover to the Trustee the $1,482,750.00 that he received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to the Trustee.

335.    Defendant Dvorak has not returned the $1,482,750.00 that he received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to the Trustee.

336.    The Trustee seeks the turnover of property of the estate pursuant to § 542 of the Bankruptcy Code and demands an accounting.

337.    The $1,482,750.00 that Defendant Belz received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. constitutes property of the estate to be recovered and administered by the Trustee pursuant to § 542 of the Bankruptcy Code.

338.    The $1,482,750.00 that Defendant DiMeglio received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. constitutes property of the estate to be recovered and administered by the Trustee pursuant to § 542 of the Bankruptcy Code.

339.    The $1,482,750.00 that Defendant Dvorak received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. constitutes property of the estate to be recovered and administered by the Trustee pursuant to § 542 of the Bankruptcy Code.

340.    Accordingly, the Trustee is entitled to immediate payment and turnover of the $1,482,750.00 that Defendant Belz received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and any and all transfers made to him by the Debtor or of the Debtor's property, directly or indirectly.

341.    Accordingly, the Trustee is entitled to immediate payment and turnover of the $1,482,750.00 that Defendant DiMeglio received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and any and all transfers made to him by the Debtor or of the Debtor's property, directly or indirectly.

342.    Accordingly, the Trustee is entitled to immediate payment and turnover of the $1,482,750.00 that Defendant Dvorak received for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and any and all transfers made to him by the Debtor or of the Debtor's property, directly or indirectly.

343.    The Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Dvorak came from property that belonged to the Debtor.

344.    Prior to the Petition Date, the Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Dvorak were the Debtor's property.

345.    The Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Dvorak remain, in the post-petition period, transfers of the Debtor's property.

346.    The Trustee continues in his demand that Defendant Belz turn over the Consulting Fees that he received to the Trustee.

347.    The Trustee continues in his demand that Defendant DiMeglio turn over the Consulting Fees that he received to the Trustee.

348.    The Trustee continues in his demand that Defendant Dvorak turn over the Consulting Fees that he received to the Trustee.

349.    The Trustee seeks the turnover of property of the estate pursuant to § 542 of the Bankruptcy Code and demands an accounting.

350.    The Consulting Fees that Defendant Belz received constitute property of the estate to be recovered and administered by the Trustee pursuant to § 542 of the Bankruptcy Code.

351. The Consulting Fees that Defendant DiMeglio received constitute property of the estate to be recovered and administered by the Trustee pursuant to § 542 of the Bankruptcy Code.

352. The Consulting Fees that Defendant Dvorak received constitute property of the estate to be recovered and administered by the Trustee pursuant to § 542 of the Bankruptcy Code.

353. Accordingly, the Trustee is entitled to immediate payment and turnover of the Consulting Fees that Defendant Belz received and any and all transfers made to him by the Debtor or of the Debtor's property, directly or indirectly.

354. Accordingly, the Trustee is entitled to immediate payment and turnover of the Consulting Fees that Defendant DiMeglio received and any and all transfers made to him by the Debtor or of the Debtor's property, directly or indirectly.

355. Accordingly, the Trustee is entitled to immediate payment and turnover of the Consulting Fees that Defendant Dvorak received and any and all transfers made to him by the Debtor or of the Debtor's property, directly or indirectly.

356. The Trustee is entitled to an accounting of all of the funds transferred by the Debtor to Defendant Belz, Defendant DiMeglio and Defendant Dvorak.

357. By reason of the foregoing, the Trustee is entitled to judgment against Defendant Belz, Defendant DiMeglio and Defendant Dvorak pursuant to Bankruptcy Code § 542 (i) requiring an accounting of all the funds transferred by the Debtor to them; (ii) requiring that the funds be returned to the Trustee in full, and/or (iii) for monetary damages in the amount to be determined at trial; and (iv) interest, attorneys' fees, and costs as may be appropriate.

AS AND FOR A FIFTEENTH CAUSE OF ACTION
FOR THE IMPOSITION OF AN EQUITABLE LIEN

358.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "357" of this Complaint as if they were fully set forth herein.

359.    The Trustee is the legal title holder of all property of the Debtor.

360.    All of the fraudulent transfers to Defendant Belz, Defendant DiMeglio and Defendant Dvorak were all part of the scheme to defraud the Debtor's creditors.

361.    The LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. allowed Defendant Belz to be unjustly enriched to the detriment of the Debtor's creditors.

362.    It is against equity and good conscience to permit Defendant Belz to retain the funds or the value thereof since they properly belong to the Debtor. Consequently, an equitable lien should be imposed against such funds and the value thereof held by Defendant Belz.

363.    The LBO Transaction and the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. allowed Defendant DiMeglio to be unjustly enriched to the detriment of the Debtor's creditors.

364.    It is against equity and good conscience to permit Defendant DiMeglio to retain the funds or the value thereof since they properly belong to the Debtor. Consequently, an equitable lien should be imposed against such funds and the value thereof held by Defendant DiMeglio.

365.    The LBO Transaction and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and

Mirage Mechanical Systems, Inc. allowed Defendant Dvorak to be unjustly enriched to the detriment of the Debtor's creditors.

366.    It is against equity and good conscience to permit Defendant Dvorak to retain the funds or the value thereof since they properly belong to the Debtor. Consequently, an equitable lien should be imposed against such funds and the value thereof held by Defendant Dvorak.

367.    The Consulting Fees paid to Defendant Belz allowed Defendant Belz to be unjustly enriched to the detriment of the Debtor's creditors.

368.    It is against equity and good conscience to permit Defendant Belz to retain the funds or the value thereof since they properly belong to the Debtor. Consequently, an equitable lien should be imposed against such funds and the value thereof held by Defendant Belz.

369.    The Consulting Fees paid to Defendant DiMeglio allowed Defendant DiMeglio to be unjustly enriched to the detriment of the Debtor's creditors.

370.    It is against equity and good conscience to permit Defendant DiMeglio to retain the funds or the value thereof since they properly belong to the Debtor. Consequently, an equitable lien should be imposed against such funds and the value thereof held by Defendant DiMeglio.

371.    The Consulting Fees paid to Defendant Dvorak allowed Defendant Dvorak to be unjustly enriched to the detriment of the Debtor's creditors.

372.    It is against equity and good conscience to permit Defendant Dvorak to retain the funds or the value thereof since they properly belong to the Debtor. Consequently, an equitable lien should be imposed against such funds and the value thereof held by Defendant Dvorak.

AS AND FOR A SIXTEENTH CAUSE OF ACTION
FOR UNJUST ENRICHMENT

373.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "372" of this Complaint as if they were fully set forth herein.

374.    The Trustee is the legal title holder of all property of the Debtor.

375.    Defendant Belz received funds from the Debtor.

376.    Defendant Belz had knowledge or is charged with knowledge that the funds were transferred fraudulently and/or without consideration.

377.    By receiving such funds, Defendant Belz was unjustly enriched at the expense of the Debtor. By paying Defendant Belz $1,482,750.00 for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. in connection with the LBO Transaction, Defendant Belz was unjustly enriched, in that the Debtor could no longer remain profitable, thereby necessitating its Chapter 11 filing on October 4, 2022.

378.    By being paid the Consulting Fees, the Defendant Belz was unjustly enriched at the expense of the Debtor.

379.    Defendant DiMeglio received funds from the Debtor.

380.    Defendant DiMeglio had knowledge or is charged with knowledge that the funds were transferred fraudulently and/or without consideration.

381.    By receiving such funds, Defendant DiMeglio was unjustly enriched at the expense of the Debtor. By paying Defendant DiMeglio $1,482,750.00 for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. in connection with the LBO Transaction, Defendant DiMeglio was unjustly

enriched, in that the Debtor could no longer remain profitable, thereby necessitating its Chapter 11 filing on October 4, 2022.

382.    By being paid the Consulting Fees, the Defendant DiMeglio was unjustly enriched at the expense of the Debtor

383.    Defendant Dvorak received funds from the Debtor.

384.    Defendant Dvorak had knowledge or is charged with knowledge that the funds were transferred fraudulently and/or without consideration.

385.    By receiving such funds, Defendant Dvorak was unjustly enriched at the expense of the Debtor. By paying Defendant Dvorak $1,482,750.00 for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. in connection with the LBO Transaction, Defendant Dvorak was unjustly enriched, in that the Debtor could no longer remain profitable, thereby necessitating its Chapter 11 filing on October 4, 2022.

386.    By being paid the Consulting Fees, the Defendant DiMeglio was unjustly enriched at the expense of the Debtor

387.    By reason of the foregoing, Plaintiff is entitled to payment from Defendant Belz, Defendant DiMeglio and Defendant Dvorak and the imposition of a constructive trust against them in the amount to be determined at trial.

AS AND FOR A SEVENTEENTH CAUSE OF ACTION<br>FOR ATTORNEYS FEES PURSUANT TO SECTION 276-A OF<br>THE NEW YORK UNIFORM VOIDABLE TRANSACTION ACT

388.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "387" of this Complaint as if they were fully set forth herein.

389.    Pursuant to § 276-a of the UVTA, in an action where a bankruptcy trustee successfully obtains a judgment to set aside a conveyance by a debtor on grounds of actual intent to hinder, delay or default either present or future creditors, the Court shall fix the reasonable attorney's fees of the bankruptcy trustee, who shall have judgment therefor against the debtor and the transferees who are defendants in addition to the other relief granted by the judgment.

390.    As alleged herein, the LBO Transaction and the $1,482,750.00 paid to Defendant Belz for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., the $1,482,750.00 paid to Defendant DiMeglio for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. and the $1,482,750.00 paid to Defendant Dvorak for his ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. were made with the actual intent to hinder, delay or default on present and future creditors.

391.    As alleged herein, the Consulting Fees paid to Defendant Belz, the Consulting Fees paid to Defendant DiMeglio and the Consulting Fees paid to Defendant Dvorak were made with the actual intent to hinder, delay or default on present and future creditors.

392.    Consequently, upon obtaining judgment on such grounds, the Trustee is entitled to a judgment against Defendant Belz, Defendant DiMeglio and Defendant Dvorak for his reasonable attorney's fees in an amount to be determined.

## AS AND FOR AN EIGHTEENTH CAUSE OF ACTION
## FOR CONSTRUCTIVE TRUST

393.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "392" of this Complaint as if they were fully set forth herein.

394.    The Trustee is the legal title holder of all property of the Debtor.

395.    The fraudulent transfers to Defendant Belz, Defendant DiMeglio and Defendant Dvorak were all part of the scheme to defraud the Debtor's creditors.

396.    The transfers to Defendant Belz, Defendant DiMeglio and Defendant Dvorak allowed them to be unjustly enriched to the detriment of the Debtor's creditors.

397.    It is against equity and good conscience to permit Defendant Belz, Defendant DiMeglio and Defendant Dvorak to retain the funds or the value thereof since they properly belong to the Debtor.

398.    Consequently, a constructive trust should be imposed against such funds and the value thereof held by Defendant Belz, Defendant DiMeglio and Defendant Dvorak.

## AS AND FOR A NINETEENTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY

399.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "398" of this Complaint as if they were fully set forth herein.

400.    Upon information and belief and according to Amended and Restated Shareholders' Agreement dated December 22, 2008, Defendant Belz, Defendant DiMeglio and Defendant Dvorak were all on the Board of Directors for Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. These entities merged and became the Chapter 7 Debtor, Blue Diamond Air Systems Inc.

401.    As Directors, Defendant Belz, Defendant DiMeglio and Defendant Dvorak had a duty to perform their duties as directors in good faith pursuant to New York Business Corporation Law Section 717 in connection with the LBO Transaction wherein they divested their ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. to the LaBellas on or about December 22, 2020.

402.    In reviewing the Declaration of the Debtor's Principal, Al Labella, under EDNY LBR 1007-4, he stated that "Like so many companies, the Debtor suffered financial setbacks as a result of the COVID-19 shutdowns and continuing delays in the construction industry."

403.    LaBella claimed that at this time, six of the Debtor's major projects were for the New York City School Authority, which had become severely in arrears on approved requisitions.

404.    LaBella further stated that the earliest unpaid requisition was not until December 2020, the same time that the LBO Transaction closed.

405.    The LBO Transaction and sale of the Defendant Belz, Defendant DiMeglio's and Defendant Dvorak's ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. transpired right at the very height of the COVID-19 Pandemic.

406.    As evidence of the financial distress at this time, the sales price contained a seller's escrow of $2,886,600.00 to ensure that not less than three PPP Loans given by Peoples United Bank (one for $2,555,400.00; one for $41,000.00 and one for $289,500) had been fully paid or forgiven before the LBO Transaction could proceed.

407.    When asked if he was aware if Blue Diamond Sheet Metal Inc. owed any vendors any money at the time of the Equity Security Purchase Agreement dated July 1, 2020, DiMeglio stated that he "didn't really know." DiMeglio further stated that he didn't take care of the books and records since he was part of the operational arm of the business. DiMeglio also did not know if Mirage Mechanical, Blue Diamond Sheet Metal or Diam-N-Blue were current on their taxes as of July 2020. When pressed further, DiMeglio essentially conceded that he did not know this

information because he didn't really look at the books and records of Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.

408.    When asked why he decided to sell his interests, Defendant DiMeglio simply replied, "Al wanted to buy us out."

409.    Similarly, Defendant Dvorak also stated that during his time at Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., he didn't really look at the books and records of these companies. Defendant Dvorak admitted that he would "occasionally" look at the books and records if Defendant Belz wanted to highlight something. Other than that, he wasn't involved in the financial affairs of these companies.

410.    When asked why he decided to divest himself of his interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., Dvorak stated that "It was just a negotiation and my partners wanted to sell and felt it was the time."

411.    When asked why he wanted to divest himself of his interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc., Defendant Belz stated that he was "looking to move on from the business." He also conceded that it was "Constant stressful situations trying to meet cash flow every year....". This intimates that Defendant Belz knew at the time of the Equity Purchase Agreement that there were financial difficulties with Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.

412.    Defendant Belz, Defendant DiMeglio and Defendant Dvorak also had a financial stake in the LBO Transaction. In addition to a sale of their ownership interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc.,

Defendant Belz, Defendant DiMeglio and Defendant Dvorak had entered into "Consulting Agreements" with Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. wherein they would be paid a consulting fee of $3,683.33 per month for 42 months, commencing effective as of the Closing Date of December 22, 2020.

413.    Conceivably, this would result in Defendant Belz, Defendant DiMeglio and Defendant Dvorak receiving an additional $154,699.86 over a three-and-a-half-year period post-closing.

414.    Under New York Business Corporation Law § 720, an action may be brought against one or more directors or officers of a corporation to procure a judgment compelling them to account for their official conduct for the neglect of, or failure to perform or other violation of his duties in the management and disposition of corporate assets committed to his charge. Section 720 also finds that a Director could be held responsible for the acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties. Under New York Business Corporation Law Section 720, the corporation is the proper party to sue for injury and damages sustained by it by reason of mismanagement or misconduct in its affairs, waste of assets or dereliction of duty by the directors, officers, agents or employees of the corporation. See *Platt Corp. v. Platt*, 21 A.D.2d 116 (1st Dep't 1984).

415.    By participating in the LBO Transaction, the Defendants allowed assets of the Debtor to be encumbered by substantial loans in favor of Dime. This contributed to the already existing financial problems of the Debtor, which in addition to unpaid requisition orders for projects involving the New York City School Authority needed an infusion of an additional

$2,886,600.00 in PPP loans just to survive due to the COVID-19 pandemic at the time that the Equity Purchase Agreement was executed in July of 2020.

416.    As a consequence of their dereliction of duty in participating in the LBO Transaction, assets of the Debtor were encumbered in order to finance the purchase of their interests in Blue Diamond Sheet Metal Inc., Diam-N-Blu Mechanical Corp. and Mirage Mechanical Systems, Inc. The increased debt load as result of the LBO Transaction, and the payments that they received for their interests in the sum of $1,482,750.00, rendered the Debtor unable to maintain operations as a going concern, resulting in a failed Chapter 11 Bankruptcy filing on October 4, 2022.

417.    By reason of the foregoing, Plaintiff is entitled to payment from Defendant Belz, Defendant DiMeglio and Defendant Dvorak for compensatory and punitive damages under New York Business Corporation Law Section 720 in an amount to be determined at trial.

## RESERVATION OF RIGHTS

418.    As set forth herein, the Trustee seeks to recover certain transfers in order to ensure recovery for the Debtor's creditors. To the extent that the Trustee discovers new evidence, he may amend this Complaint to include additional and/or new causes of action as that may be discovered.

WHEREFORE, the Trustee seeks relief as set forth herein, together with such other and further relief this Court deems just and proper under the facts and circumstances herein.

Dated:  Garden City, New York
       July 26, 2024

                     Weinberg, Gross & Pergament LLP
                     Attorneys for Plaintiff Marc A. Pergament,
                     Chapter 7 Trustee for the Bankruptcy Estate of
                     Blue Diamond Air Systems, Inc.

By:       _____

                     Marc A. Pergament
                     400 Garden City Plaza, Suite 309
                     Garden City, New York 11530
                     (516) 877-2424